VONNEGUT HARDWARE COMPANY ET AL. *v.* ROSE ET AL.

[No. 10,320. Filed October 31, 1918.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal.— Weighing Evidence.—Statutes.*—The amendment of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918) by the act of 1917 (Acts 1917 p. 154, §8020q2 *et seq.* Burns' Supp. 1918), which provides that an assignment of error that an award of the full board is contrary to law is sufficient to challenge the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts, does not give the Appellate Court authority to weigh evidence in reviewing an award by the Industrial Board, even where the member of the board who heard the evidence found for appellant, and the award appealed from was made by but two members of the board. p. 388.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Review.—Conflicting Evidence.*—In a proceedings for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), for the death of a servant, where the evidence as to the refusal of decedent and those acting for

him to permit an operation, as requested by the employer, was such misconduct as to deprive decedent's dependents of the benefits of the act was conflicting, but was clearly open to more than one inference by reasonable men, the determination of the Industrial Board with reference thereto is conclusive, since the question was one of fact.  p. 391.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Review.—Finding Based on Conflicting Evidence.*—On an appeal from an award of compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), for the death of a servant, where the evidence as to whether an autopsy was necessary to determine the cause of death and whether the demand therefor was made within a reasonable time was conflicting, the finding of the Industrial Board as to the necessity for an autopsy is conclusive on appeal.  p. 392.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Review.—Sufficiency of Evidence.*—In a proceedings for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), for the death of a servant, evidence *held* sufficient to support the Industrial Board's finding that the strangulation of the intestines which caused decedent's death resulted from hernia, and that the hernia was caused by a strain resulting from the master's work.  p. 393.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Lena D. Rose and another against the Vonnegut Hardware Company and others. From an award for applicants, the defendants appeal. *Affirmed.*

*Joseph W. Hutchinson,* for appellants.
*Lehman & Faust,* for appellees.

HOTTEL, J.—Appellees, Lena D. Rose and Georgia Rose, are respectively widow and daughter of Louis I. Rose, now deceased. On June 16, 1917, said Louis was alive and in the employ of appellant Vonnegut Hardware Company. On said day, while so employed and in the discharge of his duties connected therewith, he was taken sick, and so informed the foreman

under whom he was working. He thereupon went home. A few days later he was sent to the hospital. It there developed that he had hernia. He died* on September 2, 1917. On February 2, 1918, appellees as the sole dependents of said deceased, filed with the Industrial Board their application in the usual form for compensation. A trial before Samuel R. Artman, a member of said board, on February 19, 1918, resulted in a finding and award for appellants. A review of the full board was had on March 28, 1918, which resulted in a finding and award by a majority of said board (said Artman not joining therein) in favor of appellees. This latter finding pertinent to the questions herein discussed is in substance as follows: On June 16, 1917, one Louis I. Rose was in the employment of appellant Vonnegut Hardware Company at an average weekly wage of $10 as a general laborer or roustabout in said appellant's hardware store in the city of Indianapolis. Decedent's duties required him to keep the aisles clear, and to move the boxes and barrels out of the aisles when they were placed therein by others. On some occasions the boxes and barrels were extremely heavy. On June 16, 1917, while engaged in the discharge of his duties, decedent moved a barrel weighing about 125 pounds, and in moving said barrel accidently ruptured himself, producing a right inguinal hernia. Decedent informed the foreman of his injury immediately after it occurred and went home. On June 19 following appellant provided decedent with an attending physician and, on June 27, caused him to be taken to the Methodist Hospital in said city, where he remained for about ten days, at the expiration of which he returned home, and later resumed his

work and worked for two weeks. At the expiration of two weeks, because of his disability resulting from his• injury, decedent discontinued work, and soon thereafter was again taken to the hospital by his employer, where he died on September 2, 1917. On September 7, 1917, appellant made a written demand upon appellees for permission to exume the body of said decedent and hold an autopsy thereon, which demand was refused by appellee Lena D. Rose. Decedent left surviving him as his sole and only dependents the appellees who were living with him at the time of his injury and at the time of his death, and were wholly dependent upon him and were supported by him. From the date of his injury until his death, or eleven weeks, appellant paid decedent full wages, and during that period decedent earned wages for two weeks only. On June 16, 1917, appellant association was the insurance carrier of appellant company.

From the award rendered on this finding appellants appeal and assign as error that it is contrary to law. Under this assignment it is first con-

1.    tended that said finding is not sustained by sufficient evidence, and in support of this contention it is insisted in effect that since the amendment of the Workmen's Compensation Act (Acts 1917 p. 155, §8020q2 *et seq.* Burns' Supp. 1918), which permits both the sufficiency of the facts found and the sufficiency of the evidence to sustain the finding to be challenged by an assignment of error that the award of the full board is contrary to law, this court is given authority to weigh the evidence; that in view of the fact that the member who heard the evidence found for appellants, and that the award from which the

appeal is prosecuted is made by the other two mem-
bers alone, this court should exercise the discretion
and power authorized by said amendment, weigh the
evidence, and render judgment accordingly.

Appellants concede, and properly so, that prior to
the passing of the amendment of 1917 this court had
held that it had no power to weigh evidence. It is
insisted, however, that said question has not been
expressly passed upon by the court. As affecting this
contention it is sufficient to say that there is nothing
in said amendment of 1917 that can be said to indi-
cate any intent on the part of the legislature to give
to the appellate tribunal power to weigh evidence in
such cases. The amendment clearly was intended
merely to furnish a method of challenging the suffi-
ciency of the evidence, the same as furnished by a
like ground in a motion for new trial in the ordinary
civil case. The courts had so long and so frequently
held that a like reason in a motion for a new trial did
not authorize the weighing of the evidence, but merely
tendered to the appellate tribunal the question of
whether there was any evidence to support each of
the elements of the cause of action essential to recov-
ery, that the legislature could not have been ignorant
of such holdings, and must have intended a like mean-
ing of the language used in said amendment. It is
argued, however, that in any event the evidence fails
to support the-finding, in that it shows among other
things that the appellants asked for an operation on
decedent before his death, that such operation would
in all probability have saved his life, and that such
operation was refused by decedent and appellees. It
is sufficient to say that the evidence on this branch of
the case is conflicting. The physician furnished by

appellant testified that on Thursday before the deceased died on Sunday he told Mr. Rose that there was ''no chance of him getting well in his present condition. The only thing was to operate. That was the only chance to save him was to do the operation and see where the bowel was strangulated.'' When asked if he made any statement concerning the operation to Mrs. Rose he answered: ''Yes I did. They were there  *  *  *  They refused the operation.'' The widow denied the request testified to by Dr. Fosler, but said that Dr. Sowders told her on Thursday that he would like to have an operation; that she went over and waited until four o'clock, and Dr. Fosler did not come; that Dr. Sowder then told her on Saturday morning at the hospital that ''he could not help my husband any more. That was (what) Dr. Sowders say, so what was the use of having an operation  *  *  *  I believe he knew what he said.'' The son testified that the only times anything was said to him about an operation was on two occasions:  The first was at the doctor's office, when he told him in substance that his father had a very sore appendix; that he had no doubt but that he had appendicitis. This was the day before the point of rupture was discovered; that the following day he switched from what he said, and said that ''he knew for a certainty—that in fact he did not have appendicitis; that the rupture had been discovered at the hospital, and that not the appendix was the trouble; that he would put a truss on for the rupture, that he would have no further trouble after he had reduced the present strangulation.'' The other conversation was with Dr. Fosler on Friday preceding the father's death on Sunday, and he then did not say that an

operation was necessary to save his life, but said he did not know whether it would save it. "He said that there was some chance but he could not say positive, but as he saw it he would probably die if he didn't have an operation and an operation might possibly pull him through although he would not recommend it, and he said he wanted to have authority— if he took a chance, because he said he didn't have such a good chance of coming through at all."

The better reasoned cases and the great weight of authority seem to be to the effect that the right of compensation under the workmen's compensation acts will be defeated by the refusal of the injured party or those representing him to submit to an operation in those cases only where the operation is not attended with substantial danger to life or health or extraordinary suffering, and where "according to the best medical or surgical opinion the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering." *Jendrus* v. *Detroit Steel Products Co.* (1913), 178 Mich. 265, 144 N. W. 563, L. R. A. 1916A 381, Ann. Cas. 1915D 476, and cases there collected and cited.

We have indicated enough of the evidence on this branch of the case to show that there is conflict therein. Some of it, at least, tended to show that

2. the operation contemplated was a dangerous one; that, if it was requested, the request came too late and at a time when the condition of decedent was such that recovery therefrom would have been doubtful and uncertain. Whether a refusal to permit the operation under such circumstances was such misconduct on the part of the decedent and those

acting for him as to deprive his dependents of the benefits of said compensation act under the authorities, *supra,* was clearly open to more than one inference by reasonable men, and hence was a question of fact which, when determined by the Industrial Board, cannot be disturbed by the appellate tribunal.

It is contended by appellants that appellees were not entitled to an award because they refused appellants the benefits of an autopsy, and that such

3. examination of the body was necessary in this case to determine the cause of death. Here again there is conflict in the evidence on the question of the necessity therefor, and also on the question of the time of its demand. There was some evidence warranting the inference that there was no necessity for such autopsy, and, according to the testimony of both the mother and the son, there was no such demand made until Friday after the death of decedent. The decedent died on Sunday and was buried on the following Monday. Whether the refusal of a demand for an autopsy made after the burial of the workman will in any case deprive his dependents of their right to compensation under said act we need not determine. It is sufficient to say that a demand therefor should be made at a reasonable time and place. *Indianapolis Abattoir Co.* v. *Bryant* (1918), 67 Ind. App. 225, 119 N. E. 24; See, also, *Root* v. *London Guarantee, etc., Co.* (1904), 92 App. Div. 578, 86 N. Y. Supp. 1055, affirmed in 180 N. Y. 527, 72 N. E. 1150; *American Nat. Ins. Co.* v. *Nuckols* (1916), (Tex. Civ. App.) 187 S. W. 497. In this case the appellants knew of the death of Mr. Rose as soon as it occurred. A representative of the Vonnegut company called at the home of appellees the day before the burial. Un-

der these facts and the cases cited, *supra,* the finding of the Industrial Board on said question is conclusive on this court.

It is also claimed in effect that the evidence does not show that decedent's death was the result of any accident, and fails to show any connection between what decedent was doing on the morning he took sick and the strangulated intestine which caused his death. The evidence upon this branch of the case is not convincing, but we are unable to say that there was no evidence .authorizing the inference drawn by the board. There was evidence showing that the work of decedent required him to keep the aisles clear in appellant Vonnegut's place of business; that to do this he was frequently required to move boxes and barrels, the latter sometimes weighing from 125 to 400 pounds. It was shown that on the day he took sick he moved one of these barrels. After doing this kind of work he went to his foreman and complained, and then was sent, or went, home. When he got home he complained of being sick, and said, "It hurts me inside." Later he told his foreman in substance that he was lifting a barrel on the morning he took sick and strained himself. After being in bed three days, a physician employed by the Vonnegut company was called. The physician ordered him to the hospital, where he remained ten days. The doctor first thought he had appendicitis, but later discovered the rupture. During his disability appellant Vonnegut company paid him his wages, and paid his hospital bills, and furnished him the services of a physician and surgeon. After leaving the hospital, he went back and attempted to work for the Vonnegut company, and after work-

ing two weeks took sick again, and was again sent to the hospital by said company's physician, Dr. Fosler. He was then sick until he died. The death certificate signed by Dr. Fosler gave the cause of death as strangulated intestines. Dr. Fosler testified that he could not tell what caused the bowels to strangulate. Other doctors, however, who saw decedent in the first part of his sickness, testified that in their opinion the strangulation was caused by the hernia. The evidence indicated is, we think, some evidence at least tending to support and authorize the finding of the board that the strangulation of the intestines which caused decedent's death resulted from hernia, and that the hernia. was caused by the strain resulting from appellant's work of lifting on the morning he took sick, thus showing a continuous causal connection between the lifting and the death. In support of this conclusion, see *Puritan Bed Spring Co.* v. *Wolfe* (1918), *ante* 330, 120 N. E. 417, and cases cited; *Robbins* v. *Original Gas Engine Co.* (1916), 191 Mich. 122, 157 N. W. 437; *Madden's Case* (1916), 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D 1000; *Retmier* v. *Cruse* (1918), 67 Ind. App. 192, 119 N.E. 32; *Cleverley* v. *Gas, etc., Co.* (1907), 1 B. W. C. C. 82; *Simpson Construction Co.* v. *Industrial Board* (1916), 275 Ill. 366, 114 N. E. 138; *Bloomington, etc., R. Co.* v. *Industrial Board* (1916), 276 Ill. 120, 114 N. E. 511.

For the reasons indicated, the award of the Industrial Board is affirmed, and five per cent. damages added, as provided by §3 of the amendment of 1917 to the Workmen's Compensation Act. Acts 1917 p. 154, *supra.*

NOTE.—Reported in 120 N. E. 608. Workmen's compensation: review of findings under act, L. R. A. 1916A 163, 266, L. R. A. 1917D 186.