LOGAN *v.* ACME MACHINE PRODUCTS DIVISION, SERRICK CORPORATION.

[No. 16,910. Filed March 4, 1942.]

*Myers & Reed,* of Muncie, for appellant.
*James L. Murray,* of Indianapolis, for appellee.

DEVOSS, C. J.—This is an appeal from an award of the Industrial Board of Indiana denying compensation to appellant for alleged total permanent disability, by reason of an accident arising out of and in the course of his employment by appellee.

The petition for compensation was heard by a single member of the Industrial Board, who denied compensation; and, upon review by the full Industrial Board, said full board ordered that appellant take nothing by his application and denied an award of compensation to appellant, and from this order and award appellant appeals to this court. The error assigned for reversal herein is that the final award of the full Industrial Board of Indiana is contrary to law.

It was stipulated and agreed by the parties that appellant was in the employ of the appellee on March 15, 1940, the date of the alleged injury, at an average weekly wage in excess of $30.00; that on April 23, 1941, appellant filed his application for adjustment of compensation; and that prior thereto a good-faith effort

was made to adjust said claim and the parties disagreed.

The question presented by this appeal is the correctness of the finding of the full Industrial Board as to whether appellant suffered an injury by reason of an accident arising out of and in the course of his employment by appellee.

This court is committed to the rule, as stated on numerous occasions, that it will not weigh the evidence; and if there is any evidence of probative force to sustain the award of the Industrial Board, the same will be sustained, considering only the evidence most favorable to appellee.

The evidence discloses that appellant, Gordon Logan, was a man forty years old and that he worked for the appellee herein in 1928, 1929. At the time last mentioned he left its employ, but returned again to work for it in September, 1935, in Indianapolis. In 1937, appellee moved a division of its factory to Muncie, Indiana, and appellant continued to work for it at Muncie until the date of the alleged accident. It further appears that appellant is a metal polisher and had been working at that trade since 1914, and that prior to working for appellee, he had worked for divers concerns at the business of metal polishing. In the year 1932, at a time when appellant was working for the Universal Brass Works, for whom he had worked approximately ten years, he had some trouble with his lungs. At that time he became sick and dizzy while working and was taken home. A doctor was called and appellant was taken to the City Hospital where an examination was made and it was ascertained that he was afflicted with tuberculosis, and thereafter he was sent to Sunnyside Sanatorium in the latter part of May, 1932. He remained in Sunnyside Sanatorium

until approximately April, 1934, a period of about two years. The wife of said appellant was also in the sanatorium afflicted with tuberculosis from which she died while in the sanatorium. During the time appellant was in Sunnyside, he suffered a number of hemorrhages of the lungs. A year after he left Sunnyside, he began working for appellee in this case. In 1939, during the period of time appellant was working for appellee, he had a hemorrhage at his home and obtained a leave of absence from his work for about ten weeks; he returned to work and continued so to work until March 15, 1940. During the time he worked for appellee, he was off a number of days at different times on account of feeling weak. On the 12th of March, 1940, he had a pain under his right shoulder, felt weak and tired and did not work. And likewise on the 13th and 14th of March, 1940, for the reason that he was unable to work, he stayed home in bed and rested. On the 15th of March, 1940, at about 11 o'clock while engaging in polishing rings, appellant suffered a pain under his right shoulder, suffered another hemorrhage, and was taken home and has not been able to work since that time. There was medical testimony introduced in evidence which disclosed that from examination made on May 14, 1940, the appellant was not able to do normal work and that any exercise or work would hinder the healing process. It further appears that a Phrenic operation had been performed upon appellant some time before this examination. This operation was performed for the purpose of preventing the rise and fall of the diaphram and thereby put the lung at rest. In January, 1941, the tuberculosis was arrested but was not quiescent. It further appears that tuberculosis may develop and progress without a hemorrhage and that a hemorrhage is merely a symptom which may be pro-

duced by various causes. It further appears from medical testimony that the appellant was afflicted with tuberculosis for a long time.

Prior to the 12th day of March, 1940, appellant had been polishing headlight rings about eight inches in diameter; but on the 15th, he was engaged in polishing rings approximately 30 inches in diameter. These rings were of light material and weighed only a few ounces. In polishing these rings, they were held against a polishing wheel or lathe and pressure was put thereon by holding the ring against the stomach. There was no pressure on the lungs or the chest from the ring. Polished, they were put on a rack along side the lathe. While placing a ring on the rack, appellant felt a pain in his right shoulder and started to spit up blood. He was taken home and he has not been able to work since that time.

Dr. McIntyre testified that he examined appellant on March 27, 1941, and that the position of the arms of appellant in his work on March 15, 1940, would have no effect on producing the hemorrhage, and that it would be reasonable to assume that the hemorrhage was the result of the progression of the disease and that change of his employment from handling smaller rings to that of handling larger rings would not have been the cause of the hemorrhage. It further appears from the evidence that most hemorrhages from tuberculosis occur at night while people are at rest.

Considering the long period of time appellant had been afflicted, the fact that he had hemorrhages on different times, the fact that his wife, with whom he associated, died from tuberculosis, and considering the state of health generally of appellant over a long period of time and the further statements of a physician who had examined him, that the activity in which appellant

was engaged was no greater hazard than any other activity, and that the change of employment from handling eight inch rings to thirty inch rings was not the cause of his collapse, and that appellant's condition is as good now as it was just prior to the hemorrhage; that a hemorrhage has no accelerating effect upon the development of tuberculosis, and the further fact, there was no direct evidence that any particular activity in his employment caused the hemorrhage; we are convinced that reasonable minds might differ on the answer to the question as to whether his condition is the result of an accident which arose out of and in the course of his employment, and we are constrained to support the award of the full board.

Appellant cites the case of *Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N. E. (2d) 747, to sustain his contention herein. It is true that the circumstances therein were somewhat similar to the case under consideration. However, the long history of affliction was not present therein and there was evidence disclosing that on the date of the injury that two employees engaged in the same work as Jones were absent and that Jones and his partners hurried a little more that day. There was also evidence that the strain and exertion in lifting automobile hoods weighing from 32 to 36 pounds caused the rupture of his lung. In that case the full Industrial Board had made an award, and this court sustained the board.

Two doctors testified on behalf of appellant. Neither of them testified that the activity of appellant in performing his work would have caused the hemorrhage or have been responsible for his condition. One of them testified: "It might have caused it." One doctor who had examined appellant testified for appellee and

stated that the hemorrhage was a symptom and was the result of the progression of the disease and that the performance of his work in handling the rings would not have been the cause of the hemorrhage.

An expert witness stands upon the same footing as any other witness in so far as his credibility is concerned; and the weight of his testimony should be determined by the same rules, so far as applicable, which apply to the testimony of these witnesses, *Indianapolis Traction, etc., Co.* v. *Taylor* (1914), 55 Ind. App. 309, 103 N. E. 812, and cases cited therein.

We are in accord with numerous cases and authorities cited by appellant on the questions of what constitutes an injury arising out of an accident and in the course of employment and the construction of the Workman's Compensation Act, and the aggravation of a preexisting disease resulting in disability, yet in the final analysis of the instant case, we are confronted with the well-established rule that an order of the Industrial Board will not be reversed unless the evidence is of such a conclusive character as to force a conclusion contrary to that found by the Industrial Board. *Mitchell* v. *Ball Bros. Co.* (1933), 97 Ind. App. 642, 186 N. E. 900; *Seymour Woolen Mills* v. *Ward* (1935), 100 Ind. App. 108, 192 N. E. 892; *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 10 N. E. (2d) 314.

We have read the evidence and are of the opinion that the evidence is not of such a conclusive character as to force a conclusion contrary to that found by the board. Order and award of the Industrial Board is affirmed.

NOTE.—Reported in 39 N. E. (2d) 797.