WARNER GEAR DIVISION OF BORG-WARNER CORPORATION
*v.* DISHNER.

[No. 20,084. Filed November 16, 1964. Rehearing denied
December 15, 1964. Transfer denied Steptember 13, 1965.]

*Murray, Stewart, Irwin & Gilliom,* and *Richard W. Guthrie,* of Indianapolis, for appellant.

*Archie Lapin,* of Muncie, for appellee.

PFAFF, J.—This is an appeal from an award favorable to the appellee herein rendered by the Full Industrial Board of Indiana. In the action below the Board sustained a finding rendered by one of the members on initial hearing of fifty per cent permanent impairment to the appellee's left index finger, and in addition thereto, amended the original award to include medical expenses.

Error assigned for reversal is that the award of the Board is contrary to law. Such assignment raises the following questions:

1. Is there sufficient evidence in the record to sustain the findings of fact and award of the Board?
2. Did the Board commit harmful error in over-ruling appellant's objection to certain evidence introduced by appellee?

The pertinent facts to this appeal as they appear in the record may be briefly stated as follows:

On January 7, 1963, appellee sustained an injury to his left index finger while in the course of his employment at a plant owned and operated by the appellant. Medical attention was given at a plant first aid station on the day of the accident, and again on the following day, at which time the company safety director sent the appellant to have an X-ray taken of the injury.

On the following day, January 9, the appellee was sent by the safety director to Ball Memorial Hospital to have the injury examined by a surgeon, not the company doctor, but acting at the request of the company. The doctor examined the injury and applied a local anesthetic to relieve the pain. It was alleged that appellee asked the doctor at this time if he was going to remove the foreign body embedded in appellee's finger. The doctor replied that removal at this time would be unwise because the surgical injury inflicted by removal is frequently more severe than the foreign body itself, and is more apt to cause permanent impairment than the continued presence of the foreign body in the finger. The doctor then asked appellee to return in two days, at which time the appellee did return and complained to the doctor that he was still having pain. The doctor again reiterated his reasoning for not performing surgery.

Appellee returned to the doctor's office for a third and final visit on January 25, still bothered by pain, and again asked the doctor if he intended to remove the foreign body. At this point the evidence becomes conflicting as to the events that took place in the doctor's office. However, it appears from the entire record that appellant's doctor at this time arranged for surgery to be performed on February 12, 1963, eighteen days later, at Ball Memorial Hospital, and appellee was informed of this fact before he left the doctor's office. Appellee, apparently still bothered by the pain, then left the doctor's office and returned to work.

On the following morning appellee called his personal physician and made an appointment to see him a few days later. On February 1, 1963, appellee's physician, together with another physician, performed surgery

on appellee's finger, removing the foreign body. Appellee testified that he experienced relief from the pain about two or three days following the operation.

Appellee did not inform the appellant, nor appellant's physician, that he was being treated by his personal physician. Appellee had been told by appellant's safety director a short time after the accident that if he went to a doctor of his own choice he would do so at his own expense. Appellee's finger was examined approximately two months later by another physician of his own choosing. A written report of the physician's observations was sent to appellee's attorney of record, and a copy of that report was forwarded to the appellant.

Thus, at the initial hearing the single Board member was faced with the ultimate factual question of determining whether or not the appellee was justified in obtaining the services of his own doctor because of the circumstances existing in this cause. In arriving at this ultimate conclusion it was necessary for the Board member to determine a number of evidentiary facts, and to draw reasonable inferences therefrom.

Appellant first argues that the responsibility of furnishing medical treatment for injured employees is that of the employer, and the refusal of the employee to accept such medical attention furnished by the employer shall bar the employee from all compensation to which he would otherwise be entitled. Acts 1929, ch. 172, §25, p. 536, as amended in 1937, 1943, 1945 and 1947, being §40-1225, Burns' 1952 Replacement. This section also provides in part as follows:

"If in an emergency or because of the employer's failure to provide such attending physician or such surgical, hospital or nurse's services and supplies or such treatment by spiritual means or prayer, as herein specified, *or for other good reason,* a physi-

cian other than that provided by the employer treats the injured employee within the first one hundred eighty (180) days, or necessary and proper surgical, hospital, or nurse's services and supplies are procured within said period, the reasonable cost of such service and supplies shall, subject to approval of the industrial board, be paid by the employer." (Our emphasis)

On the issue of whether or not a refusal on the part of the employee is reasonable, such a question is one of fact to be determined by the Industrial Board. *Pipkin* v. *Continental Steel Corp.* (1938), 105 Ind. App. 669, 16 N. E. 2d 984; *Bloomfield Brick Co.* v. *Blaker* (1932), 94 Ind. App. 230, 180 N. E. 501; *Vonnegut Hardware Co.* v. *Rose* (1918), 68 Ind. App. 385, 120 N. E. 608. Further, it is a well established rule that this court will not disturb a finding of fact made by the Industrial Board unless the evidence with all reasonable inferences deducible therefrom are of such conclusive nature as to force a contrary conclusion. *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517, 75 N. E. 2d 662. It has also been stated by this court on numerous occasions that we cannot weigh the evidence, and if there is any evidence of probative value to sustain the award, considering only the evidence most favorable to the appellee, it is our duty to sustain the Industrial Board. *Logan* v. *Acme Machine Products Div.* (1942), 110 Ind. App. 556, 39 N. E. 2d 797; *Wilson* v. *Betz Corp. et al.* (1958), 128 Ind. App. 189, 146 N. E. 2d 570.

We are of the opinion that the evidence in the record and the reasonable inferences to be drawn therefrom are sufficient to sustain the finding of the Board on the factual question of reasonableness.

Appellant's second contention is that the Board

committed error in allowing testimony of the examining physician concerning any percentage of impairment to become a part of the record. Appellant bases its objection to the admission of such evidence on the ground that appellee failed to furnish appellant a report from the examining physician stating any estimate of any permanent partial impairment as required by statute. Acts 1929, ch. 172, §27, p. 536, as amended in 1943, 1945, 1947, 1949 and 1963, being §40-1227, Burns' 1964 Cum. Supp. This section requires that each side must provide the other side with a copy of the examining physician's report at least ten days prior to hearing. We are here concerned with that part of the section providing:

> "All statements of physicians or surgeons required by this section, whether those engaged by employee or employer, shall contain information regarding the history of the injury, claimed injury, as given by the patient, the physical or mental condition of such employee, and the nature and extent or amount of *disability* or impairment, if any, of such employee." (Our emphasis)

A report was furnished by the appellee's physician pursuant to the statute, but appellant argues that the report did not in any way provide any percentage of impairment as required by statute, §40-1227, *supra.*

The portion of the physician's report pertinent to our present inquiry read as follows:

> "Mr. Dishner now has a healed hand with the loss of fifty per cent motion of the index finger and fifty per cent loss of sensation with a total *incapacity* of ten per cent to the hand below the elbow." (Our emphasis)

Webster's Third New International Dictionary of the English Language, Unabridged, defines "disability" in the following manner:

"Disability . . . (4) : a physical or mental illness, injury, or condition that *incapacitates* in any way. . . ." (Our emphasis)

Referring back to that portion of §40-1227, *supra,* quoted above, it will be noted that the statute says "disability or impairment". We are of the opinion that the medical report submitted by the appellee was sufficient to comply with the requirements of §40-1227, supra.

For the reasons given herein this court is of the opinion that the award of the Full Industrial Board is not contrary to law.

Award affirmed.

Hunter, C. J., and Kelley, J., concur.

Mote, J., dissents with opinion to follow.

DISSENTING OPINION.

MOTE, J.—I am unable to agree with my brethren who, by a majority decision and opinion, have affirmed the Award of the Full Industrial Board of Indiana, because, in my opinion, there is a total lack of evidence to support the Award. Although the Hearing Member, in his finding and award, did not find from the evidence that appellee was "justified in obtaining the services of his own doctor because of the circumstances in said cause", the Full Board made such finding despite the fact that the record does not reveal any evidence or facts to support the same.

§40-1225, Burns' Indiana Statutes Annotated, in vogue at the time of the accidental injury on January 7, 1963, provides in part as follows:

"*Sec. 25. After an injury and prior to an adjudication of permanent impairment, the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician*

*for the treatment of his injuries;* .and in addition thereto· such surgical, hospital and nursing services and supplies as the attending physician or the Industrial Board may deem necessary: If the employee is requested or required by the employer to submit to treatment outside the county of employment, said employer shall also pay the reasonable· expense of travel, ·food and lodging necessary during the travel, but not to exceed the amount paid at the time· of said travel by the State of Indiana to its employees.

"During the period of temporary total disability resulting from the injury, the employer shall furnish such physician, services and supplies, and· the industrial· board may, on proper application of either party, require that. treatment by such physician and such services and supplies be furnished by or on behalf of the employer as the industrial board may deem reasonably necessary. If after an employee's injury has been adjudicated by agreement or award on the· basis of permanent partial impairment and within the statutory period for review in such case as provided in section 45 of this. act, the employer may continue. to furnish a physician or surgeon and other medical services and supplies and the industrial board may within such statutory period for review as. provided in section 45 of this act, on a proper application of either party, require that treatment by such physician or surgeon and other medical services and supplies be furnished by and ·on behalf of the employer as the industrial board may deem necessary to limit or reduce the amount and extent of süch impairment. *The refusal of the employee to accept such services and· supplies, when so provided by or on behalf of the employer, shall bar the employee from all compensation otherwise payable during the period of such refusal, and his right to prosecute· any proceeding under this act shall be suspended and abated until such refusal ceases; no compensation for permanent total impairment, permanent partial impairment, permanent disfigurement or death shall be paid or payable for that part or portion of such impairment, disfigurement or death which is the result of the*

*failure of such employee to accept such treatment, services and supplies: ...*

"If *an emergency* or because of the employer's failure to provide such attending physician or such surgical, hospital or nurse's services and supplies or such treatment by spiritual means or prayer, as herein specified, *or for other good reason,* a physician other than that provided by the employer treats the injured employee within the first one hundred eighty [180] days, or necessary and proper surgical, hospital, or nurse's services and supplies are procured within said period, the reasonable cost of such service and supplies shall, subject to approval of the industrial board, be paid by the employer." (Our emphasis.)

The record reveals the following pertinent facts as set forth in appellant's brief to which appellee has not objected.

"It was stipulated and agreed by the parties that the appellee had an accidental injury arising out of and in the course of his employment with appellant company on January 7, 1963, at which time he suffered a small laceration of imbedded steel in the left second metatarsal of the left index finger.

"The accident occurred at approximately 10:00 P.M., on January 7, 1963. The appellee immediately went to the First Aid Department at which time he received treatment. He reported back the next day and was treated by the company nurse. At that time, Mr. Eckelman, the Safety Director for the company, made arrangements for X-rays which were taken by Dr. Imhoff. Arrangements were made by the company for employee to go to Ball Memorial Hospital on January 9, 1963, where he was examined by Dr. Ralph O. Butz, surgeon of Muncie, Indiana. Both the testimony of the appellee and Dr. Butz agreed that at the time of this examination appellee complained of pain in the area of the left index finger. Dr. Butz gave a local anesthetic which was introduced into the area of the foreign body and the appellee was told by the doctor to come back in two (2) days. He re-

ported back in two days still complaining of pain, however he continued to work during this period of time. In the appellee's testimony, he pointed out that he asked the doctor whether or not he was going to remove the foreign body and the doctor at that time told him no. The doctor, in his testimony, pointed out that he informed the appellee that the healing process took time and that it would be wise to wait and see whether or not it would take care of itself. Arrangements were made for the appellee to come on January 25, which he did, and he was still complaining of pain. The appellee was very insistent upon having the foreign body removed, and the doctor, in his testimony, pointed out the reasons that he felt that it would be best to wait; but due to the fact that the appellee wanted it removed, the doctor made arrangements for the appellee to go to Ball Memorial Hospital on February 12, 1963, at which time they would prepare him for surgery on February 13. Arrangements were made in the presence of the appellee for this surgery; and on cross-examination of appellee, he admitted that at the time he left the doctor's office on January 25, he knew that arrangements were made for surgery and, at this time, no objections were made to the doctor. The following day, he contacted a doctor of his own choice, Dr. Painter of Winchester, Indiana, and made arrangements for surgery on his own. On February 1, Drs. Painter and Jordan performed the surgery at the Randolph County Hospital in Winchester, Indiana. He did not notify the company that he was going to have the surgery performed nor did he notify Dr. Butz. During this entire period of time, the appellee only lost one day from work, that being the date of surgery on February 1.

"In the instant case, the employer immediately furnished treatment to the employee on the date of the injury at the First Aid Department. He was again seen the next day on January 8 by the company nurse in First Aid, and X-rays were taken by Dr. Imhoff. On January 9, 1963, the employee was treated by Dr. Ralph O. Butz at the Ball Memorial Hospital in Muncie. At the time that Dr. Butz testified in the case, appellee's counsel

admitted the qualifications of Dr. Butz and no time was any evidence introduced by the appellee showing that Dr. Butz was not competent to furnish medical treatment."

Appellee insists that he was justified in changing physicians because surgery for the excision of a piece of metal from his hand was arranged on January 25, 1963, for February 12, 1963, in the Ball Memorial Hospital. Appellee made no objection to anyone connected with appellant to the surgery set for February 12, 1963, and we think he gave his tacit approval thereto. Thereafter, however, he went to a doctor of his own selection and had the surgery performed. Neither the doctors of his own selection, who performed the surgery, nor any other expert, testified or presented any evidence that there was an emergency or that the proposed surgery should be performed prior to the time of the arrangements made by appellant's physician. There is no evidence of an emergency and, in view of the admitted fact that appellee continued to work, even though he suffered pain, which is a subjective symptom, in our opinion, does not supply necessary and essential evidence to support the finding that appellee was justified in changing doctors.

I would reverse the Award of the Full Industrial Board.

NOTE.—Reported in 202 N. E. 2d 180.