BENEDICTO PEREZ *v.* UNITED STATES STEEL CORP.

[No. 2-576A205. Filed February 17, 1977. Rehearing denied April 5, 1977. Transfer denied July 7, 1977.]

*J. B. Smith, Andrew J. Fetsch, Beckman, Kelly & Smith,* of Hammond, for appellant.

*Douglas F. Stevenson, William D. Murray, Michael D. Freeborn, Rooks, Pitts, Fullager and Pouse,* of Chicago, Illinois, for appellee.

GARRARD, J.—In this appeal from the decision of the Industrial Board the claimant was found to have suffered a permanent partial impairment of twenty per cent (20%) of the man as a whole. The Board also found the employer was not liable for certain medical expenses incurred by the claimant. On appeal, Perez asserts error in the Board's failure to find that he was permanently totally *disabled* and in its refusal to permit him to recover the medical expenses in question.

IC 1971, 22-3-3-4 requires that after an injury and prior to an adjudication of permanent impairment, an employer shall furnish, or cause to be furnished, an attending physician and such other medical services as the physician or the Industrial Board may deem necessary. This section of the statute further provides:

> "If in an emergency or because of the employer's failure to [so] provide . . . , or for other good reason, a physician other than that provided by the employer treats the injured employee during the period . . . , the reasonable cost of

such service and supplies shall, subject to the approval of the industrial board, be paid by the employer."

The thrust of this provision is that in the absence of an emergency or other good reason, an employee is not free to simply elect, at the employer's expense, additional treatment or other physicians than those tendered by his employer. *See, Roush* v. *W. R. Duncan & Son* (1932), 96 Ind. App. 122, 183 N.E. 410; *cf., Indiana Liberty Mut. Ins. Co.* v. *Strate* (1925), 83 Ind. App. 493, 148 N.E. 425. *See, also Warner Gear Div. of Borg-Warner Corp.* v. *Dishner* (1964), 137 Ind. App. 500, 202 N.E.2d 180.

Here the employee did not refuse treatment proffered by his employer. He merely elected to secure further medical service after the employer's authorized physician indicated that no further treatment was called for. While there is evidence from which the Board could have determined there was good reason for securing such services, there was also evidence to support the Board's determination that the services for which Perez sought recovery were beyond those for which the employer is liable under § 4. Under such circumstances we are not free to reweigh the evidence in order to arrive at a different conclusion. *Warner Gear Div., supra.* We therefore affirm the determination regarding the additional medical expense.

With respect to Perez's claim of permanent total disability, the record discloses confusion in the use of the statutory terminology. Perez's claim for benefits expressly asserted permanent total disability. On application for review by the full board, the Board stated:

"The sole issue to be determined in said cause is the amount of unpaid permanent total disability plaintiff now has."[1]

The Board then found that Perez had received a twenty per

---

1. While the amount, i.e. per cent, is important to an award for permanent partial impairment, its only relevance on the question of permanent disability is whether it is 100%, i.e. total.

cent (20%) permanent partial impairment. It made no express finding on whether he was permanently totally disabled.

Disability and impairment as used in the Workmen's Compensation Act are terms of art. "Disability" means and refers to inability to work. "Impairment" means and refers to loss of a physical function. *Kenwood Erec. Co.* v. *Cowsert* (1953), 124 Ind. App. 165, 115 N.E.2d 507; *Northern Ind. Power Co.* v. *Hawkins* (1925), 82 Ind. App. 552, 146 N.E. 879.

There is, however, a further distinction that is critical to the proper disposition of Perez's claim.

IC 1971, 22-3-3 deals with the claims and benefits provided under the act. § 8 of this chapter provides for temporary total disability. § 9 concerns temporary partial disability, and § 10 covers permanent impairment, both partial and total. *Permanent total disability* is not the subject of a separate section. Instead, it appears under subparagraph (b)(3) of the impairment section. This underscores a basic distinction between the *disabilities* for which recovery may be had under the act,[2] i.e., a distinction between temporary total disability and permanent total disability.

The act, itself, does not define disability. The appellant defines it as the inability of an employee to pursue his *previous* occupation, and prior cases cited by him use that definition in dealing with *temporary* total disability. We have found none, however, that so define *permanent* total disability.

Speaking of permanent total disability under § 10 Dean Small stated:

"A total disability to be permanent must be one which so destroys or shatters a workman's wage earning capacities

2. As pointed out in *In re Denton* (1917), 65 Ind. App. 426, 117 N.E. 520, Workmen's Compensation schedules fix a specific recovery for a certain form of injury regardless of the *actual* disability and/or loss of capacity of a particular applicant. The genesis of recovery is not the extent of impairment. It is, rather, simply what the section declares. Thus, it is interpretation of the act's provisions that governs recovery entitlements.

as to leave him *unable to resume reasonable types of employment* for the remainder of his life. Since this form of disability is treated in the same section with other harms comprising threats to wage-earning power such as impairments and lost uses, total permanent disability *must be taken to require a greater incapacity than that produced by any other of the scheduled harms.* However, it is not necessary to a showing of total permanent disability that the workman prove an utter inability to do anything with the remains of his body. The believe-it-or-nots demonstrate that even the most hopeless human wrecks have on occasion developed obscure means for obtaining livelihood. It is sufficient if the workman can show that he has been so incapacitated by his injuries that *he cannot carry on reasonable types of employments.* The reasonableness of the workman's opportunities will be measured by his physical and mental fitness for them and by their availability." (emphasis added) Small, *Workmen's Compensation Law of Indiana,* § 9.4, p. 244.

Thus, in *In re Denton* (1917), 65 Ind. App. 426, 436-7, 117 N.E. 520, 523, in referring to a prior version of § 10 the court said:

"This section deals with such injuries not from the standpoint of any total disability that may result temporarily or any disability that may continue through the period fixed by the section, but from the standpoint of the consequent permanent disability, and resulting diminution in earning power extending through life."

And in *Roush* v. *W. R. Duncan & Son* (1932), 96 Ind. App. 122, 130, 183 N.E. 410, 413, the court stated:

"When the injury has reached a permanent and quiescent state, as the finding in this case discloses, and such permanent injury comes within the schedule of specific injuries enumerated in section 31 of the Workmen's Compensation Law of Indiana, *the fact that the employee is unable,* on account of his injury, to resume work of the same kind or of the same character as the work in which he was engaged at the time he received the injury, *is not such a fact as would of itself defeat a finding that total disability had ended* and that permanent partial impairment had ensued." (emphasis added)

These expressions recognize the different connotations which

attach to recoveries allowed for permanent and for temporary injuries.

Most recently in *Covarubias* v. *Decatur Casting* (1976), 171 Ind. App. 534, 358 N.E.2d 174, the Second District held that evidence that the employee could not return to his former occupation was insufficient to establish permanent total disability.

Where the injury and resulting disability are temporary and the employee can be expected to return to his prior occupation, probably with his existing employer, it is in keeping with the purpose of the act to provide temporary disability payments under §§ 7, 8 and 9 based upon his anticipated return to that occupation.

On the other hand, the principle of § 10 is to provide a fixed amount of recovery for a permanent loss. In this context a provision for permanent disability, i.e., inability to work for the remainder of one's life, naturally carries the connotation of the inability to reasonably earn a livelihood. Accordingly, we adopt Dean Small's definition of the proof necessary to establish "permanent total disability" under § 10.

Turning to the case at bar, there was ample evidence to sustain the Board's finding that Perez suffered a permanent partial impairment of twenty per cent (20%) of the man as a whole although the report of one physician characterized Perez's disability as being total and permanent and in amplification stated Perez "will not be able to return to a functional vocation again."

Accordingly, since we may not weigh the evidence, the only viable issue is whether the Board's finding of *impairment* was sufficient to establish for purposes of appellate review that the Board determined that he was not permanently *disabled*.

We note that benefits for the permanent aspect of a specific industrial injury are payable only pursuant to § 10.[3] Paragraph (a) of that section provides a schedule of benefits for specific losses, e.g., a finger, the sight of an eye, etc. Paragraph (b) then schedules the benefits payable for losses *other* than those enumerated in (a). Subsection (3) of paragraph (b) covers total permanent disability. Subsection (6) then provides:

> "In all other cases of permanent partial impairment, compensation proportionate to the degree of such permanent partial impairment, in the discretion of the industrial board, not exceeding five hundred [500] weeks."

It is arguable then that a finding entered under subsection (6) necessarily precludes a finding under subsection (3). However, subsection (6) specifically refers to cases of "impairment."

Despite the definitional difference we have drawn between that inability which constitutes temporary total disability and the inability which constitutes permanent total disability, the basic distinction between disability (the inability to work) and impairment (loss of physical function) remains. The terms do *not* describe results that necessarily are mutually exclusive. The court recognized this in *Burton* v. *Rock Road Const. Co.* (1968), 142 Ind. App. 458, 235 N.E.2d 210, where an employee claimed permanent total disability and the industrial board found that he had suffered no permanent partial impairment. On appeal this court held that the impairment finding was insufficient for purposes of judicial review to constitute a finding on the claim of permanent total disability.

Similarly, in this case where permanent total disability was expressly made an issue by the claimant, it would require speculation and conjecture upon our part to conclude from the Board's findings that it properly considered and rejected Perez's claim of disability. The findings

3. Excluding claims of aggravation which are covered by IC 1971, 22-3-3-12.

are therefore inadequate for review on the issue of permanent total disability.

Accordingly, we affirm the decision as to the claim for additional medical expenses. We reverse and remand on the issue of permanent total disability. In view of the definition of permanent total disability contained herein and in *Covarubias, supra,* the Board should grant the parties opportunity to present additional evidence pertinent to the determination of whether Perez is permanently totally disabled within the meaning of the act.

Affirmed in part; reversed in part.

Hoffman, J., concurs; Staton, P.J., concurs in part and dissents in part and files separate opinion.

OPINION CONCURRING IN PART, AND DISSENTING IN PART

STATON, P.J.—I would concur in the majority opinion to the extent that the cause is to be remanded to the Full Industrial Board for a hearing and finding on the issue of total permanent disability. *Covarubias* v. *Decatur Casting* (1976), 171 Ind. App. 534, 358 N.E.2d 174, is cited by the majority for the proposition that "evidence that the employee could not return to his former occupation [is] insufficient to establish permanent total disability." I read *Covarubias, supra,* to say that such evidence in itself is insufficient.

Perez need only show the Industrial Board that he is unable to carry on *reasonable types of employment*—not that he is utterly incapable of functioning. The only evidence in the record is to the effect that Perez "will not be able to return to a functional vocation again." *Reasonable* employment, for one experienced only in manual labor would, of necessity, be manual labor. Yet, the evidence revealed the medical opinion that Perez is one hundred per cent disabled "insofar as [employment] entails bending, stooping, lifting, physical effort." The day he was evaluated by the plant physician as being

20% permanently partially impaired, U.S. Steel took his badge, sent him home, and said, "Okay, that's it." U.S. Steel never called Perez back to work—for *any* job. The Full Industrial Board has a *responsibility* to make a specific finding on total permanent disability. *Stoner* v. *Howard Sober, Inc.* (1954), 124 Ind. App. 581, 118 N.E.2d 504; *Delaware Machinery & Tool Co.* v. *Yates* (1973), 158 Ind. App. 167, 301 N.E.2d 857.

I dissent from the majority's holding on the issue of medical expenses because I can find no evidence in the record to *controvert* Perez' statement that Dr. Martino (the specialist to whom Perez originally was sent by U.S. Steel) *advised further medical treatment*. The verbatim testimony of Perez reveals:

"Q. Did Dr. Martino do anything else for you?

"A. No, he checked on me for another couple months more. One day he told me, 'I can't do nothing for you any more.' Say, *'You probably going to need another surgery.'* I said, 'Well, I had two surgeries already, they didn't help, why should I take me another surgery if you going to help me?' So, but in the meantime he say, 'Nothing *I* can do *for you, you got to see your own doctor if you want to.'*" (Emphasis added.)

Dr. Martino did not testify. The evidence is *not* in conflict, yet the Board found that "Dr. Martino released plaintiff from his care and advised against any additional surgery." The majority picked up this phrase, but it lacks support in the record.

The Board found that the medical attention Perez sought after Dr. Martino was unauthorized. The fact that Perez was still receiving temporary disability payments negates the Board's (and majority's) implication that the injury had reached "a permanent and quiescent state." *Roush* v. *W. R. Duncan & Son* (1932), 96 Ind. App. 122, 183 N.E. 410.

Under the Indiana Workmen's Compensation Acts, the Company is liable for the costs incurred and accruing as a result of Perez' efforts toward rehabilitation while temporarily totally disabled.

". . . If in an emergency or *because of the employer's failure to provide such attending physicians or such surgical, hospital or nurses' services and supplies* or such treatment by spiritual means or prayer, as herein specified, or *for other good reason, a physician other than that provided by the employer treats the injured employee during the period of such employee's temporary total disability, or necessary and proper* surgical, hospital, or nurses' *services and supplies are procured within said period, the reasonable cost of such service and supplies shall, subject to the approval of the industrial board, be paid by the employer.*" (Our emphasis.) IC 1971, 22-3-3-4 (Burns Code Ed.)

The record discloses that there existed the possibility for relief from the pain Perez suffered. The company failed to provide further treatment. Yet, IC 1971, 22-3-3-4 (Burns Code Ed.) provides that during the period of the employee's temporary total disability the reasonable cost of service and supplies shall be paid by the employer "subject to the approval of the industrial board."

"Workmen's compensation is for the benefit of the employee. . . . Accordingly, it is well-established that the Act be liberally construed in favor of the employee so as to not negate the Act's humane purposes. . . .
"The Act creates a *duty* in the employer to compensate employees for work-related injuries (through insurance) and a *right* in the employee to receive such compensation. . . ."
" 'One of the purposes of the Workmen's Compensation Act is to transfer from the worker to the industry in which he is employed and ultimately to the consuming public a greater portion of economic loss due to industrial accidents and injuries.' " (Citations and footnotes omitted.) *Frampton* v. *Central Ind. Gas Co.* (1973), 260 Ind. 249, 251, 297 N.E.2d 425, 427.

Thus, it would negate the Act's "humane purposes" to construe "subject to the approval of the industrial board" as a broad authority to disallow medical payments which arguably stemmed from a stipulated accident and injury.

The uncontradicted evidence indicated the *advisability* of ongoing treatment. The Board's decision is contrary to the facts as presented and should be reversed. Perez is entitled

to reimbursement for medical expenses incurred during the period after he was released from U.S. Steel's physician while still on temporary total disability.

NOTE.—Reported at 359 N.E.2d 925.