Alvin B. CHILDERS, Plaintiff-Appellant,

v.

**CENTRAL TEAMING & CONSTRUCTION CO., Defendant-Appellee.**

No. 2-1077A396.

Court of Appeals of Indiana,
Third District.

Jan. 22, 1979.

Rehearing Denied March 16, 1979.

John A. Hovanec, Gary, for plaintiff-appellant.

Samuel J. Furlin, Spangler, Jennings, Spangler & Dougherty, Gary, for defendant-appellee.

GARRARD, Presiding Judge.

Childers applied to the Industrial Board for adjustment of his prior compensation award. His employer countered with a petition to vacate and a demand that Childers submit to offered medical treatment. The single hearing member denied the employer's petition and awarded Childers compensation of 80% permanent partial impairment. The full board held that Childers was entitled to compensation for only 30% permanent partial impairment as the result of his unreasonable refusal to accept proffered medical treatment pursuant to IC 22–3–3–4.[1]

Childers, who was 46, suffered a ruptured disc arising out of and in the course of his employment on February 15, 1975. He underwent surgery and resumed work in February 1976. In June he suffered a recurrence of severe back pain and was unable to continue work. Spondylolisthesis was diagnosed. The full board found this was a compensable injury, and that finding is not challenged. It was stipulated that Childers suffered an 80% permanent partial impairment as a result of his back injury. However, Dr. Roth, the examining physician, testified that this impairment could be reduced to 25% to 30% if Childers underwent the offered operation, a lateral mass spinal fusion. The operation was considered to be reasonable treatment due to the amount of existing impairment. The doctor placed the chances for a successful operation at 75% to 80%, which he felt were "good odds." He further testified that if the operation were unsuccessful, Childers would be in no worse than his present condition. While admitting that all major surgery does involve risk to the patient, he testified that the proffered surgery involved no unusual risk or extraordinary pain. Childers would suffer severe pain for a few days immediately following surgery which would then gradually lessen. The operation is the recommended "textbook" treatment for Childers' condition. It is generally accepted that one year after a successful operation the patient would be able to engage in general sports activity.

Childers was otherwise in good health and would be expected to take the surgery well. He has not questioned Dr. Roth's skill or expertise in performing the operation. It appears that Dr. Roth performed six to ten spinal fusions a year for the past twenty years. He has never had a patient die or become more disabled as a result of the surgery although admittedly some operations were not completely successful. Childers' sole reason for refusing the surgery is fear because the doctor will not guarantee his improvement or that he will live.[2]

In turning to the applicable law we first emphasize that it is not every refusal

---

1. ". . . [T]he industrial board may within such statutory period for review as provided in IC 1971, 22–3–3–27, on a proper application of either party, require that treatment by such physician and other medical services and supplies be furnished by and on behalf of the employer as the industrial board may deem necessary to limit or reduce the amount and extent of such impairment. The refusal of the employee to accept such services and supplies, when so provided by or on behalf of the employer, shall bar the employee from all compensation otherwise payable during the period of such refusal and his right to prosecute any proceeding under this article [22–3–1-–1—22–3–10–3] shall be suspended and abated until such refusal ceases; no compensation for permanent total impairment, permanent partial impairment, permanent disfigurement or death shall be paid or payable for that part or portion of such impairment, disfigurement or death which is the result of the failure of such employee to accept such treatment, services and supplies."

2. Childers testified: "Refusing is based I got no guarantee, I could be worse and I could be a lot better, but I could be a lot worse and I am, like I say, I'm still alive. That's what I want to know, no other way."

to accept medical treatment, services or supplies that will invoke IC 22–3–3–4 and mandate the reduction or elimination of compensation benefits.

 In order for the refusal to justify the reduction or elimination of benefits, the refusal must be unreasonable or without just cause. *Witte v. J. Winkler & Sons* (1934), 98 Ind.App. 466, 190 N.E. 72. However, the question of whether refusal is reasonable is one of fact to be determined by the board. *Warner Gear Div. of Borg-Warner Corp. v. Dishner* (1964), 137 Ind. App. 500, 202 N.E.2d 180. Accordingly, our review is limited to determining whether the evidence is sufficient to sustain the board's conclusion. *Parks v. Sheller-Globe Corp.* (1978), Ind.App., 380 N.E.2d 110; *Warner Gear Div., supra.*

 The evidence as set forth above is sufficient to sustain the board's finding that Childers' refusal was unreasonable. The operation does not pose a substantial danger to life or health or extraordinary suffering and does offer a substantial prospect of relieving the impairment. *See, e. g., Vonnegut Hardware Co. v. Rose* (1918), 68 Ind.App. 385, 120 N.E. 608. That a physician would decline to guarantee the success of a major medical procedure certainly does not compel a contrary result, especially since the physician could and did evaluate the substantial prospect for success.

The foregoing, of course, does not mean that Childers is being forced to undergo a recommended medical procedure. That choice is still his. However, the provisions for workmen's compensation relieve an employer from the burden of paying compensation for that portion of his impairment which exists because he has unreasonably refused the proffered treatment. The evidence in the record is certainly not so conclusively in favor of Childers as to require us to hold the board's finding was contrary to law. Accordingly, we affirm the determination.

In addition, we must decline Childers' alternative request that the case should now be remanded to the board with instruc-

tions to appoint one or more disinterested physicians to examine him and testify before the board and/or consider deposition testimony by two of Childers' physicians.

Childers admits that the depositions of his physicians are not newly discovered evidence and that he intentionally did not offer them at the hearing. In fact he stipulated that Dr. Roth's deposition was the only medical evidence to be introduced. Moreover, in view of the fact that appellee's formal demand that Childers submit to the operation was filed more than thirty (30) days before the single member hearing, we cannot accept Childers' assertion that he was not aware that the reasonableness of his refusal would be in issue. In addition, with full knowledge of the issues, Childers elected to offer no additional medical evidence for consideration by the full board. *See* Indiana Rules and Regulations (22–3–4–7)–2.

 Having failed to make any effort to introduce such evidence in the proceedings before the board, Childers cannot now be heard to complain of its absence from the record. Nor is it our proper function to relieve a litigant from a tactical decision which turned out poorly. "One cannot gamble on the outcome of a case in this manner and then complain of the action of the trier of facts . . . ." *Poke v. Peerless Foundry Co.* (1957), 127 Ind.App. 348, 141 N.E.2d 133, 135.

The decision is affirmed.

HOFFMAN and STATON, JJ., concur.