**ANDCO COMPANY, Defendant-Appellant,**

v.

**Eugene GARMANY, Plaintiff-Appellee.**

**No. 2–578A164.**

Court of Appeals of Indiana, Third District.

March 22, 1979.

Karen L. Hughes and Larry G. Evans, Hoeppner, Wagner & Evans, Lowell, for defendant-appellant.

William I. McIlwain, Byron M. Chudom, Chudom & Meyer, Schererville, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellant Andco Co. seeks review of an affirmative award by the Full Industrial Board of Indiana (Board) in favor of appellee Garmany, an employee of appellant, which granted compensation for an injury to appellee's right eye. Andco argues that the Board failed to make findings required by the evidence and made findings which were not supported by the evidence and, in addition, that the award is contrary to the evidence.

■ When reviewing an award of the Board, we consider only the evidence and the reasonable inferences therefrom favorable to the award, and we must sustain the award if there is any evidence of probative value supporting it. *Warner Gear Div. of*

*Borg-Warner Corp. v. Dishner* (1964), 137 Ind.App. 500, 202 N.E.2d 180; *Collins v. Evansville State Hospital* (1963), 134 Ind. App. 471, 189 N.E.2d 106; *Wilson v. Betz Corp. et al.* (1957), 128 Ind.App. 189, 146 N.E.2d 570.

■ Garmany suffered from an 80% detachment of the retina of his right eye. Due to this condition he was forced to undergo two surgical operations to repair the detachment. The surgery was unsuccessful and he is now totally blind in his right eye.

Garmany alleged that this injury was suffered as a result of an accident which occurred while he was engaged in his regular work duties. He testified before the Board that on July 16, 1975, he was struck on the right eye, or on the head very close to the right eye, by a large chunk of "ore dust" (defined as a large chunk of debris). The blow was of sufficient force to cause his protective head gear to fly off. In reaction to the blow, appellee slapped himself with force in the right eye with his right hand. He experienced a "flash" in the eye immediately upon being struck. After the incident, Garmany experienced difficulty with the eye. He was treated at the Bethlehem Clinic the day after the incident at which time "some stuff" was removed from the eye. After that treatment, he still experienced the feeling that something was in his eye and had "flashes" periodically. He returned to the clinic but nothing was found. When he started to see spots approximately two weeks after the incident he went to the Hammond clinic where a tear, or detachment, was found in the retina. The first operation to repair the eye occurred on August 1, 1975 and the second on September 17, 1975. By the end of September 1975, appellee was totally and permanently blind in his right eye.

Garmany had never experienced any unusual difficulties with his right eye prior to the incident nor had he suffered any accidents or injuries to this eye. He had regular eye examinations every two or three years and wore reading glasses. He did not see spots or flashes before the accident. There has been no change in the condition of his left eye.

Andco contends that there is no evidence to support the findings made by the Board. A review of the record reveals that there is probative evidence to support all the findings made with the exception, perhaps of the causation finding.

The Board found "that the medical evidence presented herein indicated that a traumatic accident such as that suffered by plaintiff could cause a detached retina such as was suffered by the plaintiff."

The medical evidence, however, would not support a finding that the accident suffered, a blow by a chunk of debris and the subsequent slap with the hand, was sufficient in and of itself to cause the injury suffered.

The testimony on this point was as follows:

(Direct examination of Dr. Carl Fetkenhour)

"Q. Did you ever form an opinion as to whether or not this condition of retinal detachment which you found was in any related to the original history that he gave you?

A. The history that we had was that Mr. Garmany got something in his eye at work; and the details of this seem to be that he was not a severe traume [sic] or blow involved. Since it was not a severe trauma or blow involved, whatever the substance was, dust or fluid or whatever, it did not seem to be associated with a striking of the eye. And we were not impressed either with the history or with the examination that the eye had, in fact, sustained an impact sufficient to cause a retinal tear and retinal detachment."

(Cross examination of Dr. Fetkenhour)

"Q. Okay. Would it make a difference, Doctor, if he had told you that after getting a substance in his eye at work that he had a sudden blow with his hand to get it out. Would that—could that change your opinion as to the type of condition that you observed and diagnosed and treated?

A. I think it would be unlikely because of the time involved. A blow severe enough to cause the extensive tearing of Mr. Garmany's retina would certainly be associated with other signs of trauma in the anterior segment of the eye. Now these signs of trauma would be inflammatory cells and inflammation in the front of the eye. And on my examination I didn't observe any of those associated findings representative of a severe trauma.

\*     \*     \*     \*     \*     \*

Q. In your opinion could a sudden hard slap of the hand cause this type of a tear?

A. Yes, it could.

Q. And, Doctor, had your history included that information is it possible that your opinion could be different?

A. No. On the basis of the ocular findings at the time of my examination and on the basis of the findings after surgery and that is again noting the demarcation line, I think that that would be a more significant—that would be more significant information than a history such as you have just described."

(Cross examination of Dr. Emil Graybow)

"Q. Well, you made an opinion without knowing how large a particle, a clump of dust it was, so I assume that shouldn't bother you when I mention how large a clump it is, if it is a sizeable piece of dust, small rock made up of a porous, a more porous material falling from thirty to sixty feet that could cause a retinal detachment, could it not?

A. It really would depend on whether or not it struck the eye directly. I would expect to see some evidence of it even two weeks later. There was slight irritation but no evidence that he had been struck by anything as heavy as you have described.

\*     \*     \*     \*     \*     \*

Q. Let's suppose further that if in the vicinity such a person got struck by such a clump or by dust of any type and at an unexpected moment at work and as a reaction thereto took his right palm of his hand and slapped himself in the eye, could that blow cause a detached retina?

A. It would have to be quite a severe blow, I find it difficult to think that someone is going to hit himself that hard.

Q. That may be, but would that cause a detachment?

A. I can't answer that."

The doctor later conceded that it was "possible such could be a cause."

Thus, the only reasonable conclusion to be drawn from this evidence is that while a blow such as suffered by the appellee could possibly cause a detached retina, it was not the physician's opinion that the injury suffered by appellee was caused by either the blow from the debris or the hand. If the Board's causation finding was that the blow or slap was the independent cause of Garmany's injury and there was no other evidence from which to reasonably draw that conclusion, the award is contrary to law as not supported by the evidence. *Palace Bar, Inc. v. Fearnot* (1978), Ind., 381 N.E.2d 858.

However, there was medical evidence introduced which might indicate that appellee had a pre-existing eye condition which made the eye more susceptible to the injury suffered; that the accident aggravated or accelerated a pre-existing condition which resulted in the total and permanent blindness of appellee's right eye.

This evidence is as follows:

Dr. Fetkenhour testified that in his opinion the retinal detachment was due to one of two reasons, "idiopathic degenerative processes" or "a past trauma of a rather severe nature" involving a direct blow to the eye. He further stated that appellee's retinal detachment had been present for at least 3 months prior to August 14, 1975 (at least two months before the accident). In

his opinion it is common for retinal detachments to occur which would not be noticed for an "inordinately long period of time, particularly when the vision in the fellow eye is good." Dr. Fetkenhour stated:

"And I think that with a retinal detachment of this configuration and extent it would be highly likely that the detachment had actually started sometime ago."

Dr. Graybow explained that the first symptoms of a detached retina are flashing lights and floaters.

The testimony of Dr. Harold Feinhandler reveals that a slap on the eye can aggravate or accelerate a pre-existing tendency or a smaller retinal detachment.

"Q. All right. Let's start first as to cause, doctor, what would be your opinion as to cause?

A. I would feel that it is possible that the slap on the eye had caused or aggravated a pre-existent tendency or presence of a smaller retainal [sic] detachment.

\* \* \* \* \* \*

Q. Now, doctor, if in fact—I am going to have to ask you another hypothetical question here. If in fact we are given the fact that a patient has degenerative retinal disease, can a slap or a contusion to the eye hasten that retinal detachment?

A. Yes." [1]

Furthermore, Garmany testified that he had good eyesight immediately prior to the accident but afterwards experienced flashes, spots and finally total blindness in the eye within three months of the accident.

From the evidence, it might be that the Board intended to find the accident aggravated or accelerated a pre-existing condition. However, a careful reading of the entire order of the Board does not satisfactorily reveal, to this court whether the Board intended to find this or whether it intended to find that the accident was an independent cause of appellee's disability. Moreover, if the Board intended to find the

---

1. Dr. Feinhandler himself could not determine if appellee had had such a pre-existing condi-

tion because he examined the eye after it had undergone two surgical operations.

accident an independent cause, the findings of fact made are insufficient. Since it is not within the province of this court to find facts for the Board, we are compelled to remand this case for more explicit findings. *Olin Corp. v. Calloway* (1974), 160 Ind.App. 69, 309 N.E.2d 829.

Reversed and remanded.

STATON and HOFFMAN, JJ., concur.