RICHMOND STATE HOSPITAL,
Appellant (Defendant Below),

v.

Deborah WALDREN, Appellee
(Plaintiff Below).

No. 2–481A137.

Court of Appeals of Indiana,
Second District.

March 30, 1983.

Linley E. Pearson, Atty. Gen., Harry J. Steinmetz, Deputy Atty. Gen., Indianapolis, for appellant.

Clyde Wililams, Jr., Williams, Delaney & Simkin, Richmond, for appellee.

SULLIVAN, Judge.

Richmond State Hospital (Richmond Hospital) appeals the Industrial Board's award of statutory medical expenses to Deborah Waldren.

Richmond Hospital presents two issues for review:

1. Whether sufficient evidence supports the Industrial Board's finding that Waldren's phlebitis was secondary to a job-related injury; and

2. Whether sufficient evidence supports the Board's finding that Waldren had good cause to seek medical treatment from her personal physician.

Waldren injured her right ankle on May 30, 1979 in an accident arising out of and in the course of her employment with Richmond Hospital. Richmond Hospital's staff physician, Dr. Carlos Yu, examined her and referred her to Dr. Clyde Kernek in Indianapolis.

Without notifying Richmond Hospital, and without its authorization, Waldren consulted another doctor, Dr. Alan Glock, because she "wanted a more professional opinion." Dr. Glock testified that he initially saw Waldren on July 11, 1979, on the referral of her attorneys. Waldren returned to work in October, 1979, or shortly thereafter, and continued working until approximately June 13, 1980.[1] On that date, and again without notifying her employer, Waldren entered Randolph County Hospital on the advice of Dr. Glock for treatment of phlebitis in her right calf. On June 27, 1980, Dr. Glock sent a notice to the Hospital in which he informed the Hospital that Waldren had been admitted to the Randolph County Hospital on June 13, 1980 for phlebitis, a condition which he stated was the result of the injury suffered on May 30, 1979. She was released from the Randolph County Hospital on July 2, 1980, the day following her termination of employment with Richmond Hospital. Richmond Hospital did not have her examined by a physician, nor did it tender medical services. Thereafter, Waldren filed an application for review of the previously approved disability agreement because of a change in conditions. She requested additional compensation from Richmond Hospital for an increase or recurrence of disability allegedly resulting from the May 30, 1979 injury.

The decision of the hearing judge stated in part:

"The issues for the Hearing Judge to determine are: temporary total disability, if any, and the medical expenses, and if they are to be borne by the defendant.

. . . .

[D]efendant did not tender medical care for the phlebitis condition which the plaintiff suffers.

[D]ue to the failure of the defendant to tender medical care, the plaintiff had good cause to seek medical treatment from Dr. Alan R. Glock.

[T]he phlebitis condition for [sic] which the plaintiff suffers is secondary to the injury she suffered on May 30, 1979.

[P]laintiff was temporarily totally disabled from July 11, 1980 to and including the date of the hearing, and in all probability, will continue said disability up to December 15, 1980.

[D]efendant shall pay all statutory medical expenses incurred as a result thereof." Record at 38-39.

---

1. On February 22, 1980, Waldren and Richmond Hospital entered into an agreement, approved by the Industrial Board, for payments for temporary total disability for a period of seventeen weeks from June 18, 1979 through October 15, 1979.

Richmond Hospital filed an application for review by the full Industrial Board. The Board adopted the hearing judge's award.[2]

I.C. 22–3–3–4 (West's Ann.Code 1981) provides in part:

"After an injury and prior to an adjudication of permanent impairment, the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician for the treatment of his injuries, and in addition thereto such surgical, hospital and nursing services and supplies as the attending physician or the industrial board may deem necessary. . . .

During the period of temporary total disability resulting from the injury, the employer shall furnish such physician, services and supplies, and the industrial board may on proper application of either party, require that treatment by such physician and such services and supplies be furnished by or on behalf of the employer as the industrial board may deem reasonably necessary. . . .

If in an emergency or because of the employer's failure to provide such attending physician or such surgical, hospital or nurse's services and supplies or such treatment by spiritual means or prayer, as herein specified, or for other good reason, a physician other than that provided by the employer treats the injured employee during the period of such employee's temporary total disability, or necessary and proper surgical, hospital, or nurses' services and supplies are procured within said period, the reasonable cost of such service and supplies shall, subject to the approval of the industrial board, be paid by the employer."

### I.

Richmond Hospital contends that Waldren's phlebitis was not related to the injury she received on May 30, 1979. The evidence was conflicting regarding whether the phlebitis in the claimant's right calf was related to the injury suffered over a year

before. Dr. Yu, Richmond Hospital's staff physician, testified that phlebitis may be caused by obstruction of circulation, injury to a vein or artery, various drugs, or trauma. He stated that if a trauma were to cause phlebitis, the result would occur either immediately or within a few days; thereafter one could not be certain of the cause. However, Dr. Yu admitted that other doctors might disagree that phlebitis must necessarily occur so soon after an injury. He stated he had never treated a case of phlebitis caused by trauma.

Dr. Glock testified that when phlebitis occurred in both legs, it was usually due to a metabolic problem. When it was focal or unilateral, however, it was most often due to trauma. He stated that trauma could cause phlebitis this long after an injury. He concluded that Waldren's work-related injury was the cause of her phlebitis.

The causal relationship between Waldren's injury in May 1979 and her condition in June 1980 is a question of fact. This Court will not disturb a finding of fact made by the Industrial Board unless the evidence and all the reasonable inferences following from the evidence force a contrary conclusion. *Warner Gear Division of Borg-Warner Corp. v. Dishner* (1964) 137 Ind.App. 500, 202 N.E.2d 180. The evidence here is merely conflicting. Its weight and credibility were for the Board to determine, not this Court. *Perez v. United States Steel Corp.* (3d Dist.1977) 172 Ind.App. 242, 359 N.E.2d 925; *Drompp v. East* (1961) 134 Ind.App. 110, 178 N.E.2d 217. There was evidentiary support for the Board's determination that Waldren's phlebitis resulted from the injury received in the course of employment.

### II.

Richmond Hospital argues that because Waldren retained Dr. Glock to treat her and entered Randolph County Hospital without first obtaining its permission, it should not be obligated to pay these expenses.

---

**2.** No issue is presented in this appeal with respect to the determination that Waldren's temporary total disability "reoccurred" on July 11, 1980.

■ Under I.C. 22–3–3–4, after a work-related injury and before an adjudication of permanent impairment, an employer is required to furnish or cause to be furnished an attending physician and any other medical services that the attending physician or the Industrial Board may consider necessary. Under this provision an employee generally is not free to elect, at the employer's expense, additional treatment or other physicians than those tendered by the employer. *Perez v. United States Steel Corp.,* supra, 359 N.E.2d 925; *Pipkin v. Continental Steel Corp.* (1938) 105 Ind.App. 669, 16 N.E.2d 984; *Indiana Liberty Mutual Insurance Co. v. Strate* (1925) 83 Ind.App. 493, 148 N.E. 425. *Cf. Peters v. Casey, Trustee* (1964) 245 Ind. 666, 201 N.E.2d 496 (absent a statute giving persons receiving benefits the right to choose the physician who will treat them, they have no such right). Nevertheless, the statute allows the employee to select medical treatment under three circumstances: (1) in an emergency; (2) if the employer fails to provide needed medical care; or (3) for other good reason. Because the claimant bears the burden of proving facts necessary to establish her claim, Waldren bore the burden to prove that one of these circumstances existed. *Ziegler v. Tipton Lumber Co.* (1958) 128 Ind.App. 249, 147 N.E.2d 679.

■ There was no evidence, nor did the Industrial Board find, that an emergency justified the claimant in choosing her own physician. Furthermore, although the hearing judge's award adopted by the Board stated that plaintiff "had good cause to seek medical treatment from Dr. Alan R. Glock" (record at 39), that award is devoid of any finding with respect to such cause other than the failure of Richmond Hospital to tender medical care. To the extent, therefore, that the determination of the Board might be argued to rest upon "other good reason" as specified in the statute, it may not be considered by us. *Perez v. United States Steel Corp.* (1981) Ind., 426 N.E.2d 29.

We are concerned only with Richmond Hospital's "failure to tender medical care."

There is no evidence in the record that the Hospital had any knowledge of Waldren's condition until June 27, 1980, fourteen days after she entered the Randolph County Hospital on her personal physician's advice.

The majority rule is set forth in 2 Larson, *Workmen's Compensation Law* § 61.12(c) (1981) as follows:

"[I]t is generally held that the employee should ... not incur medical expense without first giving the employer a reasonable opportunity to furnish such services, and if he does so, the employee will be liable for that expense himself. The mere fact that claimant has more faith in his family doctor, or lacks confidence in the employer's doctor, is not enough to change the rule."

Before June 27, 1980, the Hospital was not given the opportunity to furnish medical aid because it had no knowledge of a need therefor. There can be no failure to provide within the meaning of the statute without knowledge of need.

We do not hold that in all instances an employee must give prior notification to the employer before seeking private medical care. *Cf.* I.C. 22–3–3–1 ("No lack of knowledge by the employer [of an injury] ... shall bar compensation, unless the employer shall show that he is prejudiced...."). Our holding is a narrow one: when the employer has no knowledge of the need for medical services and no opportunity to tender the medical services and when no emergency or other good cause is shown, he cannot be held liable for them.

Waldren's claim for medical expenses must be severed. Her claim is remanded to the Industrial Board for a determination of the medical expenses incurred within a reasonable time after Richmond Hospital was notified of the need for such services. Waldren will be entitled to an award for that amount only. In all other respects, the award of the Industrial Board is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.