Barry DAUGHERTY, Appellant (Plaintiff below),

v.

INDUSTRIAL CONTRACTING & ERECTING, Appellee (Defendant below).

No. 93S02–0209–EX–501.

Supreme Court of Indiana.

Feb. 5, 2004.

Michael Rader, Terre Haute, IN, Attorney for Appellant.

William R. Groth, Fillenwarth Dennerline Groth & Towe, Mark T. Robbins, Indianapolis, IN, Attorneys for Amicus Curiae Indiana State AFL–CIO.

Craig R. Van Schouwen, Randall J. Zromkoski, Thomas F. Macke, David L. Hollenbeck, Bradley L. Banks, Valparaiso, IN, Attorneys for Amicus Curiae Indiana Trial Lawyers Association.

Kathryn A. Moll, Nation Schoening Moll, Fortville, IN, Attorney for Appellee.

RUCKER, Justice.

### Case Summary

An employee injured on the job underwent knee replacement surgery without prior approval from his employer. Although the Worker's Compensation Board found the surgery reasonable and appropriate it declined to award the employee the cost of the surgery or any sum for prospective care and treatment because the surgery was not authorized either by the employer or the Board. We conclude however that the employee demonstrated "other good reason[s]" for the unauthorized medical care and therefore is entitled to relief.

### Facts and Procedural History

The undisputed facts in this case are as follows. Barry Daugherty was an employee of Industrial Contracting & Erecting ("IC & E"). On May 8, 1997 Daugherty sustained injuries to his right knee after a fall at work. Under applicable provisions of Indiana's Worker's Compensation Act ("Act"), IC & E provided Daugherty with compensation for temporary total disability, along with an extensive course of medical care and treatment from six different doctors. However, the care and treatment did not relieve the pain in Daugherty's knee. One doctor, Dr. Robert C. Gregori, determined that Daugherty's injury was permanent and quiescent. As a result, on March 11, 1998 Dr. Gregori assigned Daugherty a permanent partial impairment rating of ten percent (10%) of the right lower extremity and released him from further care.

Because he was still experiencing pain, Daugherty requested the Worker's Compensation Board to appoint an Independent Medical Examiner. The Board granted the request and appointed Dr. Frank Throop. After conducting a physical examination, Dr. Throop determined that Daugherty suffered lingering pain in his right knee, but concluded that Daugherty's injury had achieved its "maximum medical improvement." R. at 215. Dissatisfied with the result, and still suffering pain, Daugherty on his own contacted Dr. Peter J. Brooks, an orthopedic surgeon at the Cleveland Clinic. Dr. Brooks recommended that Daugherty undergo a total knee replacement. Daugherty contacted IC & E's worker's compensation insurance carrier and relayed Dr. Brooks' recommendation. The insurance carrier responded that the procedure was not authorized at that time. Nonetheless, Daugherty followed Dr. Brooks' recommendation. He underwent knee replacement surgery, which proved to be a success, and returned to work four months later eventually resuming his normal duties.

Daugherty filed an application for adjustment of claim with the Worker's Compensation Board seeking, among other things, payment of the charges and expenses incurred for his knee replacement surgery. After conducting a hearing, a single hearing member found in relevant part: "Based largely upon [Daugherty's] return to work and his credible testimony

as to his improvement following the surgery by Dr. Brooks, it is found, with the benefits of hindsight, that Dr. Brooks' recommended care and treatment was reasonable and appropriate." Order at 3. The single hearing member went on to find, "[A]s appropriate as the care was, it was clearly and definitively unauthorized by [IC & E] and its workers [sic] compensation carrier at the time [Daugherty] chose to go forward with it." *Id.* Finally, the single hearing member concluded, "[B]ecause the care was specifically indicated by [IC & E] to be unauthorized, [Daugherty] is not entitled to payment of the charges and expenses incurred for the right knee replacement at the Cleveland Clinic." *Id.* at 4.

Daugherty appealed to the full Board, which adopted the single hearing member's decision by a vote of 4–3. Raising several issues, Daugherty then sought review before the Court of Appeals. A divided panel of the court affirmed concluding among other things "the Board did not err when it declined to cover the cost of the surgery itself because Daugherty proceeded without authorization from [IC & E's] insurance carrier or the Board...." *Daugherty v. Indus. Contracting & Erecting,* 765 N.E.2d 1280, 1284 (Ind.Ct.App. 2002). Having previously granted transfer, we now reverse the decision of the Worker's Compensation Board on this issue and remand this cause for further proceedings. On all other issues we summarily affirm the opinion of the Court of Appeals.

### Discussion

Indiana Code section 22–3–3–4 provides in relevant part:

(a) After an injury and prior to an adjudication of permanent impairment, the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician for the treatment of his injuries, and in addition thereto such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary....

(b) During the period of temporary total disability resulting from the injury, the employer shall furnish the physician services, and supplies, and the worker's compensation board may, on proper application of either party, require that treatment by the physician and services and supplies be furnished by or on behalf of the employer as the worker's compensation board may deem reasonably necessary....

(d) If, because of an emergency, or because of the employer's failure to provide an attending physician or surgical, hospital, or nursing services and supplies, or treatment by spiritual means or prayer, as required by this section, or because of any other good reason, a physician other than that provided by the employer treats the injured employee during the period of the employee's temporary total disability, or necessary and proper surgical, hospital, or nurses' services and supplies are procured within the period, the reasonable cost of those services and supplies shall, subject to the approval of the worker's compensation board, be paid by the employer.

Our courts have long held that under the foregoing statute an employee generally is not free to elect at the employer's expense additional treatment or other physicians than those tendered by the employer. *K–Mart v. Morrison,* 609 N.E.2d 17, 33 (Ind. Ct.App.1993); *Richmond State Hosp. v. Waldren,* 446 N.E.2d 1333, 1336 (Ind.Ct. App.1983); *Perez v. United States Steel Corp.,* 172 Ind.App. 242, 359 N.E.2d 925, 927 (1977). This view is consistent with the majority rule, which provides:

[I]t is generally held that the employee should ordinarily not incur medical expense without first giving the employer a reasonable opportunity to furnish such services, and an employee who does so will be liable for that expense. The mere fact that claimant has more faith in the family doctor, or lacks confidence in the employer's doctor, is not enough to change the rule.

5 Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 94.02[3] (2002). Nonetheless, the statute allows the employee to select medical treatment under three circumstances: (1) in an emergency; (2) if the employer fails to provide needed medical care; or (3) for other good reason. Ind.Code § 22–3–3–4(d); *Richmond*, 446 N.E.2d at 1336.

▇ In its brief in opposition to transfer, IC & E does not address Indiana Code section 22–3–3–4 and its application to the facts of this case. Rather, directing this court's attention to Indiana Code section 22–3–3–7(c) IC & E contends Daugherty's failure to request a hearing before the Board, prior to obtaining knee replacement surgery, is fatal to his claim. *See* Br. in Resp. to Pet. for Trans. at 6–12. IC & E points specifically to that portion of Indiana Code section 22–3–3–7(c) which provides, "[i]f either party disagrees with the opinion of the independent medical examiner, the party shall apply to the board for a hearing under IC 22–3–4–5." According to IC & E, once Doctor Throop determined that Daugherty's injury had achieved its maximum medical improvement, Daugherty was required to seek a hearing before the Board if he did not agree with the doctor's opinion. We disagree.

Indiana Code section 22–3–3–7(c) begins, "[o]nce begun, *temporary total disability* benefits may not be terminated by the employer unless [certain events not at issue here occur]." I.C. § 22–3–3–7(c) (emphasis added). The statute goes on to say, "the employer must notify the employee in writing of the employer's intent to terminate the payment of *temporary total disability* benefits" and sets forth a procedure for the employee to contest the employer's decision if the employee disagrees. *Id.* (emphasis added). The statute continues "[i]f the board is unable to resolve the disagreement within ten (10) days ... the board shall immediately arrange for an evaluation of the employee by an independent medical examiner." *Id.* Significantly, the statute instructs:

If the independent medical examiner determines that the employee is no longer temporarily disabled or is still temporarily disabled but can return to employment that the employer has made available to the employee, or if the employee fails or refuses to appear for examination by the independent medical examiner, *temporary total disability* benefits may be terminated. *If either party disagrees with the opinion of the medical examiner, the party shall apply to the board for a hearing under IC 22–3–4–5.*

*Id.* (emphasis added).

At issue here are payments for "physician services and supplies," I.C. § 22–3–3–4(b), and not payments for temporary total disability. The record shows that an independent medical examiner indeed determined that Daugherty no longer was temporarily disabled and assigned him an impairment rating. Thus, Daugherty's temporary total disability benefits were terminated. However, nothing in the record shows that Daugherty disagreed with the medical examiner's opinion that he was no longer temporarily disabled. Although as a part of his claim, Daugherty sought payment of TTD benefits from the date he was assigned an impairment rating until the date he went back to work,

the record shows that the termination of TTD benefits were not Daugherty's primary concern. Rather, Daugherty testified, "I wanted my knee fixed and wanted back to the line of work I did prior." R. at 14. Because the issue in this case has nothing to do with the independent medical examiner's opinion concerning Daugherty's temporary disability, Daugherty was not required to seek a hearing before the Board to contest the issue. In essence, Indiana Code section 22–3–3–7(c) has no applicability here.

■ The question remains whether Daugherty was required to seek Board approval or approval from IC & E before undergoing knee replacement surgery. As we mentioned above, the answer is generally yes. However there are exceptions. No prior approval is necessary: (1) in an emergency; (2) if the employer fails to provide needed medical care; or (3) for other good reason. There is no claim here that the surgery was required because of an emergency. Nor does Daugherty claim that IC & E failed to provide him needed medical care.[1] In fact, at IC & E's expense, Daugherty received the services of over six treating physicians. Each physician essentially determined that there was little else medical science could to do to alleviate the pain in Daugherty's knee. This case is not one of failure to provide needed medical care, but rather a disagreement over the appropriate care.

Here, Daugherty argues that IC & E should bear the cost of his knee surgery under the "other good reason" exception to the general rule.

■ When an employee seeks treatment other than that provided by the employer or the Board, he or she does so at his or her own peril and risks not being reimbursed. The mere fact that the unauthorized medical treatment is an acceptable method of treating the condition does not mean that the employer should pay for the treatment. However as Professor Larson observes:

> [D]ifficult questions can arise when there is a difference of opinion on diagnosis or appropriate treatment, as when the employer's doctor recommends conservative measures while the claimant thinks he or she should have surgery.

5 Larson, *Larson's Workers' Compensation Law* § 94–02[5], at 94–19 (2002). "One way to settle this kind of controversy is to let the result turn on whose diagnosis proved to be right." *Id.* Several jurisdictions have embraced this approach. *See, e.g., Caldwell v. Joseph W. Vestal & Son, Inc.,* 237 Ark. 142, 371 S.W.2d 836, 838 (1963) (noting that claimant "acted at his peril in overriding the insurer's warning that the proposed operation would be at the claimant's own expense," but on the strength of hindsight knowledge that the operation was in fact necessary, the court·

---

1. Amicus Indiana Trial Lawyers Association argues that when IC & E's worker's compensation insurance carrier informed Daugherty that it would not "authorize" his knee replacement surgery, the carrier effectively denied additional treatment. According to Amicus "[t]his denial constitutes a refusal to provide care as required in I.C. 22–3–3–4(d)." Br. of Amicus at 5. Because we resolve this issue on other grounds we decline to address Amicus' general proposition that a failure to authorize care is synonymous with a failure to provide care. We do note however-

er the record in this case shows the insurance carrier actually informed Daugherty that his surgery was not authorized "at that time." R. at 229. Rather, Daugherty was told that "once he got the [medical records concerning the surgery recommendation] to the worker's comp board we would just kind of go with their decision from there." *Id.* The clear indication here is that the carrier was not failing to provide care, but rather was awaiting further developments before making a decision one way or the other.

held employer responsible for paying the incurred medical expenses); *McCoy v. Indus. Accident Comm'n,* 64 Cal.2d 82, 48 Cal.Rptr. 858, 410 P.2d 362, 365 (Cal.1966) (declaring employee entitled to reimbursement for self-procured treatment from her doctor because the care was "reasonably required to cure or relieve" the effects of the injury); *Mattingly v. Okla. Indus. Court,* 382 P.2d 125, 128 (Okla.1963) (describing as "mere idle gesture" the medical care provided by employer and holding employer liable for employee's successful but self-procured, unauthorized medical expenses); *cf. Halbert v. U.S. Fid. & Guar. Co.,* 185 Neb. 775, 178 N.W.2d 781, 783 (1970) (awarding employee the costs of an unsuccessful self-procured surgery because "it was grounded upon a reasonable belief that improvement would result"), *modified,* 186 Neb. 23, 180 N.W.2d 879 (1970).

We find particularly persuasive the Virginia case of *Shenandoah Prods., Inc. v. Whitlock,* 15 Va.App. 207, 421 S.E.2d 483 (1992). In that case, the employee suffered a work-related lower back injury, and was treated by several doctors, one of whom was designated as the authorized treating physician. After reviewing tests from a physical therapist and neurologist, the treating physician issued an evaluation that concluded the employee could return to work without restrictions. Apparently still in pain and dissatisfied with the evaluation, the employee sought the advice of a specialist for a neurosurgical evaluation. At the specialist's suggestion, the employee underwent surgery. Prior to doing so, both the employer and treating physician refused authorization for treatment. The State of Virginia's Worker's Compensation Commission awarded medical expenses to the employee on grounds that she "benefited from the surgery." *Id.* at 485. The employer appealed contending the surgery was not authorized and therefore the employer was not liable for payment.

Construing a Worker's Compensation Statute that is similar to our own,[2] the Virginia Court of Appeals noted that without a referral from an authorized treating physician, treatment by an unauthorized physician is allowed in an "emergency" or "for other good reason." *Id.* In that case there was no question the treatment the employee received was not required due to an emergency. However, acknowledging this was a case of first impression in Virginia, and citing supporting authority from other jurisdictions, the Court fashioned the following test:

> [I]f the employee, without authorization but in good faith, obtains medical treatment different from that provided by the employer, and it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, the employer should be responsible, notwithstanding the lack of prior approval by the employer. These legal principles which provide a basis for the payment of unauthorized medical treatment are part of the "other good reasons test."

*Id.* at 486 (citations omitted); *accord H.J. Holz & Son, Inc. v. Dumas–Thayer,* 37 Va.App. 645, 561 S.E.2d 6 (2002). We

---

2. The statute provides in relevant part:

> If in an emergency or on account of the employer's failure to provide the medical care during the period herein specified, or for other good reasons, a physician other than provided by the employer is called to treat the injured employee, during such period, the reasonable cost of such service shall be paid by the employer if ordered so to do by the Commission.

Va.Code § 65.2–603(C).

agree with Virginia's approach, and adopt the foregoing test as appropriate for evaluating the existence of good reason under Indiana Code section 22–3–3–4. The test is also consistent with the longstanding rule of this State, namely:

> [T]erms contained in our Work[er]'s Compensation Act are to be liberally construed so as to effectuate the humane purposes of the Act; doubts in the application of terms are to be resolved in favor of the employee, for the passage of the Act was designed to shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public.

*Talas v. Correct Piping Co., Inc.*, 435 N.E.2d 22, 28 (Ind.1982); *see also Stump v. Commercial Union*, 601 N.E.2d 327, 331–32 (Ind.1992). We hasten to add that reimbursement for medical treatment not authorized by the employer, or the Board, should be the rare exception. Indeed the employee runs a high risk that he or she will not be reimbursed for such treatment. And the employee can avoid that risk simply by obtaining prior approval.

▬▬ Nonetheless, if an employee can demonstrate good reason for the unauthorized care, then subject to the approval of the Board, the employer will be responsible for paying the cost of certain medical care. Applying the foregoing test, we determine that Daugherty has made such a showing. The record shows that Daugherty submitted to the treatment of Dr. Brooks without obtaining approval of the employer or the Board. However, he did first seek prior approval from the employer's insurance carrier. This fact suggests he acted in good faith. The record also shows that the course of treatment being offered by IC & E was inadequate. Despite the efforts of numerous physicians and other health care professionals Daugh-

erty still suffered pain and was unable to return to work performing his regular duties. Finally, the Board specifically found that Dr. Brooks' recommended care and treatment was "reasonable and appropriate." We think this is the functional equivalent of "reasonable and necessary." In sum, the record before us is sufficient to demonstrate that Daugherty's decision to obtain unauthorized medical care fell under the "other good reason" exception to the general rule that an employee is not free to elect, at the employer's expense, additional treatment or other physicians than those tendered by the employer.

### Conclusion

We reverse that portion of the Full Worker's Compensation Board's decision denying Daugherty relief on grounds that his medical care was unauthorized. This cause is remanded for further proceedings.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.