**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**RICHARD FOX**
**STEVEN A. GUSTAFSON**
The Law Office of Richard R. Fox
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**ANTHONY K. FINALDI**
Fogle Keller Purdy, PLLC
Louisville, Kentucky

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORI HARROLD, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1306-EX-564 |
| | ) | |
| L & D MAILMASTERS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE INDIANA WORKERS COMPENSATION BOARD
The Honorable Linda Hamilton, Chairman
Cause No. C-202433

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Lori Harrold ("Harrold") appeals the order of the Worker's Compensation Board ("the Board") denying her application for adjustment of her worker's compensation claim.

We affirm.

## ISSUE

Whether the Board erred in denying Harrold's application for adjustment of her worker's compensation claim.

## FACTS

Harrold was an employee of L&D Mailmasters ("L&D") in a printing center. As a part of her regular duties, Harrold would load paper into laser printers, print requested documents, and stack finished print requests on carts.

On March 24, 2009, Harrold was working on a project that required her to remove thick newspapers from a conveyor belt, stack them quickly, and then pass them to a co-worker. After doing this for some time, Harrold began to experience severe pain in her back and hip. Harrold notified L&D of the injury, and L&D accepted it as an injury in the course of her employment. L&D provided Harrold with treatment from several physicians and paid her temporary total disability benefits from June 29, 2009 through December 21, 2009.

Dr. Michael Doyle ("Dr. Doyle") treated Harrold's injury first. His examination, including a magnetic resonance image ("MRI"), showed a degenerative back disease that was aggravated by a repetitive lumbar strain. Dr. Doyle recommended nonoperative

2

treatment, including "an intensive core strengthening program combined with some activity modifications." (Tr. Vol. III 196). Dr. Doyle also thought that Harrold would benefit from epidural steroid blocks. Dr. Doyle referred Harrold to another doctor for the epidural injections. Harrold ultimately chose not to have the injections because she was afraid.

Harrold continued her treatment with Dr. David Steinberg ("Dr. Steinberg"). Dr. Steinberg examined Harrold and her previous treatment records. His diagnosis and recommended treatment mirrored that of Dr. Doyle: physical therapy and epidural steroid blocks. Harrold again declined the injections but did participate in physical therapy three times a week and used transcutaneous electrical nerve stimulation treatment. Dr. Steinberg's records reflect Harrold mentioning that she might seek "surgical opinions outside of the realm of worker's comp." (Tr. Vol. III 209).

Dr. Steinberg found Harrold to be at maximum medical improvement on December 15, 2009, and, as previously mentioned, her temporary total disability payments ended shortly thereafter. Harrold disagreed with Dr. Steinberg's findings and the termination of her benefits. On December 30, 2009, Harrold filed an "Application for Adjustment of Claim" with the Board and requested an independent medical examination. The Board assigned Dr. John Guarnaschelli ("Dr. Guarnaschelli"), and he conducted the examination March 3, 2010. Dr. Guarnaschelli also concluded that Harrold had reached maximum medical improvement.

On March 23, 2011, without authorization from L&D or its worker's compensation insurance carrier, Harrold consulted Dr. Rolando Puno ("Dr. Puno") for

continued issues with her back. Dr. Puno's examination, diagnosis, and recommended treatment were similar to Dr. Doyle's and Dr. Steinberg's. In follow-up questions to his examination from L&D, Dr. Puno stated that Harrold's prior treatment was medically reasonable and appropriate, that he did not recommend surgery because she had not tried epidural steroid blocks, and, at that time, surgery was not medically necessary.

In May of 2011, Harrold, again without authorization from L&D or its worker's compensation insurance carrier, returned to Dr. Doyle and told him that Dr. Puno recommended surgery. Dr. Doyle performed fusion surgery to Harrold's lower back on May 19, 2011.

On May 8, 2012, at the request of L&D, Dr. Robert Sexton ("Dr. Sexton") examined Harrold. Dr. Sexton concluded that Harrold's surgery was not necessary, nor was it related to her accident at work. Dr. Sexton also stated that Harrold had reached maximum medical improvement no later than August 6, 2009.

Harrold's claim was heard before a single hearing member on September 6, 2012. On November 21, 2012, the single hearing member issued a decision finding that Harrold had reached maximum medical improvement on December 15, 2009, that any treatment after that date was not related to her work accident, and that Harrold did not sustain any permanent partial impairment as a result of the work accident. Harrold applied for a review to be conducted by the entire Board. The parties tendered briefs and presented argument before the full Board on May 13, 2013. On June 13, 2013, the Board entered an order adopting and affirming the single hearing member's decision. Harrold now appeals.

4

In reviewing a challenge to a decision of the Board, this Court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Kovatch v. A.M. General*, 679 N.E.2d 940, 942 (Ind. Ct. App. 1997), *trans. denied*. We neither reweigh the evidence, nor judge the credibility of the witnesses. *Id.* at 943. "We must disregard all evidence unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings." *Id.* The burden rests with the claimant to prove a right to compensation under the Worker's Compensation Act. *Danielson v. Pratt Industries, Inc.*, 846 N.E.2d 244, 247 (Ind. Ct. App. 2006). If the Board reaches a legitimate conclusion from the evidentiary facts, we cannot disturb that conclusion, although we may prefer another legitimate result. *R.L. Jefferies Trucking Co. v. Cain*, 545 N.E.2d 582, 590 (Ind. Ct. App. 1989), *trans. denied*. "Although we are not bound by the Board's interpretation of the law, we will reverse the Board's decision only if the Board incorrectly interpreted the [Worker's Compensation] Act." *Krause v. Indiana University-Purdue University at Indianapolis*, 866 N.E.2d 846, 851 (Ind. Ct. App. 2007), *trans. denied*.

In her brief, Harrold frames the issue as whether her injury is compensable, and claims her surgery was authorized because a physician previously approved by L&D performed the procedure. However, L&D provided Harrold treatment from multiple doctors and paid temporary total disability payments for six months. L&D's primary

5

objection, and the dispositive question, is whether the subsequent surgery, not the injury itself, is compensable.

Indiana Code § 22-3-3-4(d) provides the following:

If, because of an emergency, or because of the employer's failure to provide an attending physician or surgical, hospital, or nursing services and supplies, or treatment by spiritual means or prayer, as required by this section, or because of any other good reason, a physician other than that provided by the employer treats the injured employee during the period of the employee's temporary total disability, or necessary and proper surgical, hospital, or nurses' services and supplies are procured within the period, the reasonable cost of those services and supplies shall, subject to the approval of the worker's compensation board, be paid by the employer.

In interpreting this section, our Indiana Supreme Court's opinion in *Daugherty v. Industrial Contracting & Erecting*, 802 N.E.2d 912 (Ind. 2004) is instructive.

There, Daugherty injured his knee after a fall at work. Industrial Contracting & Erecting ("IC & E") provided temporary total disability benefits along with extensive medical care and treatment from several doctors. One doctor determined that Daugherty's injury was permanent, assigned him a permanent partial impairment rating of ten percent (10%), and released him from further care or treatment. Daugherty still experienced pain in his knee and requested the Board to appoint an Independent Medical Examiner. The Board did so, and, after an examination, the doctor concluded that Daugherty's injury had reached its maximum medical improvement. On his own, Daugherty contacted an orthopedic surgeon at the Cleveland Clinic. The surgeon recommended that Daugherty have a total knee replacement surgery. Daugherty notified IC & E's worker's compensation insurance carrier and told them of the surgeon's recommendation. The insurance carrier would not authorize the surgery at that time.

6

Daugherty went forward with the surgery, which proved to be successful, and he returned to work.

Our Supreme Court held that IC & E was responsible for the costs of Daugherty's surgery under the "other good reason" provision of I.C. § 22-3-3-4(d). The Court adopted the following test to determine whether unauthorized medical treatment falls under the "other good reason" exception:

> [I]f the employee, without authorization but in good faith, obtains medical treatment different from that provided by the employer, and it is determined that the treatment provided by the employer was inadequate treatment for the employee's condition and the unauthorized treatment received by the claimant was medically reasonable and necessary treatment, the employer should be responsible, notwithstanding the lack of prior approval by the employer.

*Daugherty*, 802 N.E.2d at 918-19. However, in adopting this test, the Supreme Court still acknowledged the rule that an employee is not free to seek additional treatment at the employer's expense or to see physicians other than those provided by the employer. *Id.* (citing *K-Mart v. Morrison*, 609 N.E.2d 17, 33 (Ind. Ct. App. 1993); *Richmond State Hosp. v. Waldren*, 446 N.E.2d 1333, 1336 (Ind. Ct. App. 1983); *Perez v. United States Steel Corp.*, 172 Ind. App. 242, 359 N.E.2d 925, 927 (1977). The Court also continued to caution that:

> When an employee seeks treatment other than that provided by the employer or the Board, he or she does so at his or her own peril and risks not being reimbursed. The mere fact that the unauthorized treatment is an acceptable method of treating the condition does not mean that the employer should pay for the treatment.

*Daugherty*, 802 N.E.2d at 917. Applying the adopted rule to Daugherty's case, our Supreme Court found that he satisfied the "other good reason" provision

7

because Daugherty sought authorization from IC & E's insurance carrier, IC & E's treatment of his injury was found to be inadequate, and the Board found the knee replacement surgery to be reasonable and appropriate.

Applying the same principles from *Daugherty* to Harrold's claim, we find that L&D is not required to pay for Harrold's surgery. First, Harrold never sought approval from L&D or the Board for her surgery. In fact, Dr. Steinberg's records reflect that Harrold planned to explore surgical options outside of worker's compensation. Next, every doctor that treated Harrold recommended physical therapy and epidural steroid injections. Harrold participated in physical therapy, but she did not accept any injections. Harrold cannot claim inadequate treatment from physicians provided by L&D when she, on her own accord, did not avail herself of all treatment offered. Finally, at the hearing, Harrold testified that Dr. Puno recommended surgery, and Harrold communicated this recommendation to Dr. Doyle. However, Dr. Puno clearly states in his records that he did not recommend surgery because Harrold never took advantage of the epidural injections. Harrold has not shown that her surgery is compensable under I.C. § 22-3-3-4(d). Accordingly, we find that the Board did not err in denying Harrold's adjustment claim for her surgery.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.