

**FILED**

Dec 07 2016, 9:24 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert W. Rock
Gerling Law Offices, P.C.
Evansville, Indiana

ATTORNEY FOR APPELLEE

Doris L. Sweetin
Allen & Newman, PLLC
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

John C. Morris,

*Appellant-Plaintiff,*

v.

Custom Kitchen & Baths,

*Appellee-Defendant.*

December 7, 2016

Court of Appeals Case No.
93A02-1601-EX-179

Appeal from the Indiana Worker's
Compensation Board

The Honorable Linda Peterson
Hamilton, Chairman

Application No.
C-219200

**Robb, Judge.**

# Case Summary and Issue

[1] John Morris is a licensed building contractor in Vanderburgh County, Indiana, and the sole proprietor of Custom Kitchen & Baths ("CKB"). Morris often uses his contractor's license, skills, tools, and vehicle in volunteer community projects, particularly with the Boy Scouts of America, in which his son is a participant. In August 2012, Morris suffered an injury while constructing a 10' x 10' garden storage shed ("Olivet Project") for Olivet Presbyterian Church ("Church") in Evansville, Indiana. The Olivet Project was constructed as a volunteer Boy Scout project and Morris was not compensated for its construction. Following his injury, Morris filed claims with CKB's worker's compensation carrier, the Church's insurance company, and the liability carrier for the Boy Scouts, all of whom paid money to or on behalf of Morris. In 2013, Morris filed an Application for Adjustment of Claim with the Indiana Worker's Compensation Board ("Board"), which a Single Hearing Member denied. Morris then appealed to the full Board, which affirmed the Single Member's decision. Morris appeals from the Board's denial of his Application for Adjustment of Claim, raising one issue for review: whether his injury arose out of and in the course of his employment. CKB cross-appeals, seeking reimbursement of monies paid to or on behalf of Morris. Concluding Morris' injury arose out of and in the course of his employment, and is therefore covered by Indiana's Worker's Compensation Act, we reverse the decision of the Board and remand for a determination of disability benefits.

# Facts and Procedural History[1]

In 2011, Morris obtained his general contractor's license and formed his sole proprietorship, CKB. Through his business, Morris designs and renovates kitchens and baths from start to finish. Prior to 2011, Morris owned a business called Envision Designs and sold cabinets and countertops.

As a licensed contractor, Morris often performs volunteer community service projects involving carpentry or construction, for which he is not compensated, either through his church or the Boy Scouts. Morris' son, Brad, was a Boy Scout and Morris was an Assistant Scout Manager. Morris testified that since 2003, he has performed thirteen Boy Scouts' community service projects in Vanderburgh County and Warrick County; through these community service projects, he donates the building materials as well as his skills, tools, contractor's license, and vehicle. While it was not his "primary concern for doing the [community service] projects," Morris stated he receives a substantial amount of business and goodwill from these projects. Transcript at 45. He testified,

> [I]t was a matter of working with other scout families and working with friends of scout families and by doing that I obtained a lot of business . . . . [B]ut just in the general course of the project you meet a lot of parents and they [ask] what do you do and, of course, some of them know and some of them don't.

---

[1] We held oral argument in this case on November 3, 2016, in Indianapolis, Indiana. We commend counsel for their excellent arguments.

> And they engage me and [say] hey can you come by and look at this project for me and I just—a lot of what do you call it— networking . . . .

Tr. at 44-45. At the Single Member Hearing, Morris produced three witnesses who testified they hired Morris to perform work, for which he was paid, after observing his work on certain community service projects. For example, David Hayhurst, a Boy Scout acquaintance of Morris, testified he "had seen [Morris] do a fair bit of work through the [Boy] Scouts and seemed like he really knew what he was doing. So, that's why we went ahead and [hired Morris]." *Id.* at 19. In addition, Amy Johnson, a member of Morris' church, testified she hired Morris to perform work at her home because she "knew of [Morris'] skills and what he did through [Boy Scouts]—known him for years and years through there. That he was a contractor, designed kitchens, did all that kind of work." *Id.* at 34.

[4]   In 2012, Morris and his son approached the congregation of the Church regarding the Olivet Project. They promoted the Olivet Project to the Church as a Boy Scout venture, and the Church approved the Olivet Project and its design. Brad planned a significant amount of the Olivet Project, and the Church did not employ, compensate, or contract with Morris or CKB, and had no control or input over the Olivet Project except for approving the project and its design. Further, the Boy Scout troop posted a plaque next to the project stating the Olivet Project was constructed as a Boy Scout project.

However, the Olivet Project was constructed under Morris' supervision and could not have been performed without his skills, tools, materials, and contractor's license. Benjamin Miller, the Vanderburgh County Building Commissioner, testified the Olivet Project could only be constructed if Morris was a properly licensed building contractor in Vanderburgh County. Moreover, Vanderburgh County ordinances required Morris to display his contractor's license number on his work vehicle and carry his license with him at the construction site. If Morris failed to obey the ordinances, he would be subject to a fine. Morris, through his business account, purchased and donated $1,244.46 in building materials for the Olivet Project. When Morris prepared his tax return, he deducted the cost of the donated materials as a business expense.

On August 6, 2012, while working on the Olivet Project, Morris fell from the roof of the storage shed and suffered a fracture to his right leg. As a result of the fractured leg, Morris underwent three separate surgeries. Following his injury, Morris filed a claim with CKB's worker's compensation insurance carrier, West Bend Mutual Insurance Company. West Bend paid Morris $5,757.14 in temporary total disability benefits and $87,654.60 for his medical treatment. Morris also submitted a claim to Church Mutual Insurance, the Church's liability insurance carrier. Church Mutual paid an additional $10,000 on behalf of Morris. The Boy Scouts of America's insurance carrier, Health Special Risk, Inc., also paid medical bills on behalf of Morris.

[7] On February 4, 2013, Morris filed his Application for Adjustment of Claim with the Board. A hearing before a Single Member of the Board was held on November 3, 2014. The Single Member denied Morris' claim on January 26, 2015, and Morris filed his Application for Review by the full Board shortly thereafter.

[8] After a hearing before the full Board, the full Board adopted the findings of the Single Member, modified the findings by adding findings number six and seven, and affirmed the denial of Morris' Application for Adjustment of Claim. The Board determined Morris did not meet his burden to show his injuries arose out of and occurred in the course of his employment:

1.  [Morris] was hurt while building a yard barn structure as part of his son's Eagle Scout project.

2.  [Morris'] business is as a building contractor but at the time of his injury he was not being paid for the project.

3.  [Morris] introduced evidence that he worked on several Eagle Scout projects with others seeking goodwill and this translated into an increased clientele for the business.

4.  [Morris'] injury did not arise out of his employment with Custom Kitchens.

5.  [Morris] should take nothing on his Application for Adjustment of Claim filed February 4, 2013.

6.  [Morris] is and has been a committed parent, supporter and leader in his sons' Boy Scout troop.

7. [Morris'] injury arose out of an activity that was motivated by [Morris'] desire to further his son's Eagle project in particular and to further the goals [of] his son's Boy Scout troop in general and did not arise from the business of which [Morris] is the sole proprietor.

Appellant's Appendix at 4-9. Morris now appeals; CKB cross-appeals, seeking reimbursement of monies paid to or on behalf of Morris.

# Discussion and Decision

## I. Standard of Review

The Indiana Worker's Compensation Act is to be liberally construed to effectuate its humane purpose. *Daugherty v. Indus. Contracting & Erecting*, 802 N.E.2d 912, 919 (Ind. 2004). In reviewing a challenge to a decision of the Board, this court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Kovatch v. A.M. Gen.*, 679 N.E.2d 940, 942 (Ind. Ct. App. 1997), *trans. denied*. We neither reweigh the evidence, nor judge the credibility of the witnesses. *Id.* at 942-43. "We must disregard all evidence unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings." *Id.* at 942. The burden rests with the claimant to prove a right to compensation under the Worker's Compensation Act. *Danielson v. Pratt Indus., Inc.*, 846 N.E.2d 244, 247 (Ind. Ct. App. 2006). "Although we are not bound by the Board's interpretations of law, we will reverse the Board's decision only if the Board incorrectly interpreted the

[Worker's Compensation] Act." *Krause v. Ind. Univ.-Purdue Univ. at Indianapolis*, 866 N.E.2d 846, 851 (Ind. Ct. App. 2007), *trans. denied*.

## II.  Arising Out of and in the Course of Employment

Indiana Code section 22-3-2-2(a) mandates the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment . . . ."  The dual requirements the accident be "arising out of" and "in the course of" employment must both be met, and neither alone is sufficient.  *Conway v. Sch. City of East Chicago*, 734 N.E.2d 594, 598 (Ind. Ct. App. 2000), *trans. denied*.  An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee.  *Milledge v. Oaks*, 784 N.E.2d 926, 929 (Ind. 2003).  A causal connection exists when a reasonable person would consider the injury to be the result of a risk incidental to employment or when there is a connection between employment and the injury.  *Milledge*, 784 N.E.2d at 929.  An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto.  *Id.*

In *Knoy v. Cary*, 813 N.E.2d 1170 (Ind. 2004), Gemtron Corporation, a glass shelving manufacturer, sponsored a cleanup project at a Vincennes city park. Employees were encouraged, but not required, to attend the cleanup.  Notice of the project was posted on a company bulletin board inviting employees to

attend. The company publicized the event with advertisements in the local newspaper and supplied participating employees with work gloves, food, and beverages. Donald Knoy, a Gemtron employee, supplied a tractor for removing debris from a riverbank. During the cleanup, Joseph Cary, another Gemtron employee, was injured by Knoy's negligent operation of the tractor. Cary filed suit against Knoy in Knox Superior Court. While the case was appealed to the supreme court on a different issue—whether the trial court lacked subject matter jurisdiction because Cary's exclusive remedy was under the Act—the principle question was whether Cary's injury "ar[ose] out of and in the course of" employment. *Knoy*, 813 N.E.2d at 1171.

[12] Ultimately, our supreme court concluded Cary's injuries arose out of and in the course of his employment with Gemtron and were therefore covered by the Act. In reaching this decision, the supreme court relied on two cases: *Noble v. Zimmerman*, 237 Ind. 556, 146 N.E.2d 828 (1957) and *Ski World, Inc. v. Fife*, 489 N.E.2d 72 (Ind. Ct. App. 1986). The supreme court summarized those cases, stating,

> [I]n *Noble*, this Court allowed recovery under the Worker's Compensation Act for an employee's death that occurred at an after-hours activity sponsored by his employer. The employer in *Noble* held a business meeting at his lakeside summer residence with the understanding that at the conclusion of the meeting, dinner would be provided and there would be an opportunity for the employees to enjoy swimming and boating. After the business meeting concluded, an employee was injured diving into the lake and subsequently died. In sustaining compensation for his death under the Worker's Compensation Act, this Court

explained that injuries suffered while participating in after-hours recreational activities are usually not compensable because the injuries typically occur when the employee is not performing any duty related to his employment. The Court reasoned, however, that "in recent years it has become increasingly evident that employers are more and more utilizing recreational programs for their employees . . . in aiding and promoting better business relations with persons in their employ." The Court concluded that the employee's injury arose out of and in the course of his employment.

The Court of Appeals reached the same conclusion in [*Ski World*], involving an injury during an after-hours party for the employees sponsored by the employer. The court reasoned that this Court's emphasis in *Noble* was not on whether attendance at the party was required, but on the nexus between the claimant's employment and the party. The court pointed out that Ski World "encouraged and therefore presumably expected its employees to attend the party . . . provided the food, the refreshments, the entertainment and the recreational equipment . . . and believed that holding such an event would be in its best business interests." This was sufficient connection between the employer's business and the recreational activity to support coverage.

*Knoy*, 813 N.E.2d at 1171-72 (alteration in original) (internal citations omitted). The Court further explained that "where the employer's interests in sponsoring an after-hours activity are not merely altruistic, but are also intended to improve the business, the activity may be incidental to employment." *Id.* at 1172. The Court concluded that similar to generating goodwill among employees, an employer's public image and goodwill in the community is a significant business consideration. *Id.* at 1173. Therefore, it was in Gemtron's business

interest to involve itself in community projects and its "sponsorship of and participation in the project served its business interests by enhancing its image, fostering a good relationship with the local community, and team building among its employees." *Id.* at 1172.

[13] Morris contends his case is factually and legally analogous to *Knoy*, and that his practice of participating in community service projects "fostered the growth of goodwill, his business reputation, and additional business" for CKB. Brief of Appellant at 12. In response, CKB recognizes Indiana courts have held some after-hours activities leading to an employee's injury are compensable; however, CKB argues the Olivet Project was not an "employer-sponsored activit[y]," as required by *Knoy*. Appellee's Brief at 13. CKB points out the Olivet Project was primarily intended to benefit Brad Morris' Boy Scout ambitions, and that Brad actually planned the project and approached the congregation of the Church about the Olivet Project. Further, CKB states,

> Sponsorship by the employer encompasses more than a decision by Morris to help his son with an Eagle Scout Project. It encompasses more than Morris' [sic] using some of his tools and his building knowledge to assist in the construction of the shed, or having his pickup truck parked at the site or, even donating some of the materials for the Project.

*Id.* at 14.

[14] We do not think "sponsorship" was intended to be a term of art or to connote a certain level of community awareness to be achieved by a business; rather, the focus is on the "connection between the employer's interests in improving the

business by holding the after-hours work-related activity and the employee's employment." *Curry v. D.A.L.L. Anointed, Inc.*, 966 N.E.2d 91, 95-96 (Ind. Ct. App. 2012) (citing *Knoy*, 813 N.E.2d at 1172), *trans. denied*. In this case, Morris demonstrated a sufficient connection between his interests in improving his business by conducting community service projects and his sole proprietorship. At the Single Member Hearing, Morris introduced evidence showing he contributed to and participated in thirteen Boy Scout projects over a period of ten years. For the Olivet Project, Morris donated the materials his son needed to complete the project which were deducted as a business expense, used CKB's tools and equipment, and participated in and directed its construction. Morris also parked his truck, which was clearly marked with the name of his business, telephone number, and contractor's license number near the construction site. Moreover, the Vanderburgh County Building Commissioner's testimony indicates the Olivet Project could not have been built without a contractor's license, and without Morris' license, Brad would either have had to create a different project or not build one.

[15] CKB stresses the fact Morris primarily intended the Olivet Project to benefit his son's Boy Scout endeavors. For example, Brad planned a significant amount of the project, and sought approval from and submitted documents to the Boy Scouts to be eligible to achieve an Eagle Scout ranking based on the project. Although we acknowledge the Olivet Project was primarily intended for this purpose, it does not alter the final resolution of the issue. In *Knoy*, Gemtron sponsored and engaged its employees to participate in a community cleanup

project of a local park. *Knoy* does not indicate what level of involvement, if any at all, Gemtron contributed to planning the actual cleanup. Likewise, Morris contributed to and participated in the Olivet Project. Regardless of whether Brad planned a significant amount of the Olivet Project, the facts demonstrate Morris played a significant role in the project, and it could not have been completed without his contributions.

[16] Further, Morris' business received a direct benefit from his participation in community service projects, such as this one. *Cf. Knoy*, 813 N.E.2d at 1172 (noting Gemtron did not receive or expect a direct business benefit). Morris testified that while improving his business and community relations were not his "primary concern for doing the [community service] projects," his businesses did garner a substantial amount of business and goodwill as a result. Tr. at 45. Morris described his participation in the projects as opportunities for "networking" and engaging with the community, and at the Single Member Hearing Morris produced three witnesses who testified they hired Morris after observing his prior work on community service projects. *Id.* All of Morris' witnesses testified they knew of Morris and CKB through Morris' participation in Boy Scouts, observed the quality of his work on Boy Scout community service projects, and subsequently hired him to complete remodeling or kitchen design in their homes.

[17] As noted above, the Worker's Compensation Act is to be liberally construed in order to effectuate its humane purpose, and we conclude these facts inescapably lead to a decision opposite of the Board's decision—that Morris' injury arose

out of and in the course of his employment. *See Daugherty*, 802 N.E.2d at 919. Because we hold Morris' injury is covered by the Worker's Compensation Act, we do not address CKB's cross-appeal.

# Conclusion

[18] We conclude the facts presented inescapably lead to a decision opposite of the Board's decision, and that Morris' injury arose out of and in the course of his employment. Therefore, Morris' injury is covered by the Indiana's Worker's Compensation Act. Accordingly, we reverse and remand for determination of the benefits he should receive.

[19] Reversed and remanded.

Mathias, J., and Brown, J., concur.